Willa THOMAS and Verlie Ingram, Appellants,

v.

Lottie HIGGINBOTHAM, Respondent.

No. 46745.

Supreme Court of Missouri, Division No. 1.

Dec. 8, 1958.

Robert V. Niedner, Niedner & Niedner, St. Charles, for appellants.

Donald E. Dalton, St. Charles, for respondent.

DALTON, Judge.

Action to quiet and determine title to described real estate in St. Charles County, Missouri, with a cross-action to quiet and determine title to an undivided one-fourth interest in the described property in defendant. The trial court found that plaintiffs were the owners of an undivided three-fourths interest and defendant the owner of an undivided one-fourth interest in said property and entered judgment accordingly. Plaintiffs have appealed.

The facts are not in dispute. George W. Higginbotham died testate in 1905 owning the described real estate. The provision of his will under which both plaintiffs and defendant claim is as follows:

"Fourth. All my Real Estate, which consists now of my farm in Sections 20 & 29 in Township 47 of Range 1 East in St. Charles County, Missouri, I give devise and dispose of as follows, to-wit: To my said son Robert Higginbotham I give and devise the undivided one half of all my Real Estate to have and to hold, use and enjoy for and during his natural life, and at his death to pass to and vest in his child or children absolutely should he have children surviving him. But in the event he shall die without issue living, and his brother Charles Higginbotham shall survive him, then said real estate shall pass to said Charles Higginbotham for and during his natural life, and at his death vest absolutely in his heirs at law.

"To my said son Charles Higginbotham I give and devise the other undivided one half of all my real estate, to have and to hold, use and enjoy for and during his natural life, and at his death to pass to and vest in his child or children absolutely should he leave a child or children surviving him, but in the event he shall die without issue living and his brother Robert Higginbotham shall survive him, then said real estate shall pass to said Robert Higginbotham for his natural life, and at his death vest absolutely in his heirs at law. In the event both of my said sons, the said Charles Higginbotham and Robert Higginbotham shall die without living issue; then all of said real estate shall pass to and vest absolutely, at the death of the survivor of them, in the heirs at law of the survivor of them. The said real estate is not to be sold or conveyed, mortgaged or encumbered in any manner in the life time of my said sons Charles Higginbotham and Robert Higginbotham, nor shall it be subject to seizure and sale or execution or otherwise, nor any interest or share in the same for the satisfaction of any debts or liabilities that have been incurred or that may hereafter be incurred by my said sons Robert Higginbotham or Charles Higginbotham or either of them."

It is admitted that the will was written by a lawyer, Charles Wilson. Robert Higginbotham died in 1935 and he was survived by no issue. Charles Higginbotham died January 21, 1956. He was survived by his widow, Lottie Higginbotham, defendant-respondent and by two children, Willa Thomas and Verlie Ingram, plaintiffs-appellants.

Appellants contend that an undivided one-half interest in the described real estate passed, under testator's will to his son, Robert, for life, and upon his death in 1935 to testator's son, Charles, for his life, and upon Charles' death in 1956, the remainder vested in Charles' children, appellants, as "heirs at law" of Charles. Respondent contends that when the remainder in fee vested on January 21, 1956, she, as widow of Charles, was one of his "heirs at law" and took a one-half interest in this

one-half interest, that is, a one-fourth interest in the described real estate under Laws 1955, p. 385, Section 236; Section 474.010(1) (a) RSMo 1949, V.A.M.S. The undivided one-half interest in the described real estate first devised to Charles for life and at his death to his "children" is not in dispute, since it is admitted that this one-half interest in the described property is vested in appellants as the "children of Charles Higginbotham."

Appellants' theory, in support of their contention that the widow of Charles took no interest in the described real estate under the will, is that the will shows on its face (1) that it was not testator's intention that his son's widow (respondent) should become a beneficiary of testator's estate; (2) that testator is presumed to have known the law and to have expressed his will in the light of the law in effect at the time of his death; (3) that, at the time of testator's death, the spouse of a life tenant would not have been the life tenant's "heir"; (4) that testator in his will used the word "heirs" synonymously with "children" and did not intend to include a life tenant's spouse; and (5) that the "saving clause" of the Probate Code of 1955 demands that the interest which accrued at Robert Higginbotham's death be not impaired by operation of changes made by the Code.

The issue presented is whether the determination as to what persons should be entitled to take under the devise in the will to the "heirs at law" of the second life beneficiary, Charles Higginbotham, is governed by the statutory definition in force at the date of the death of Charles, rather than that in effect at the time of the execution of the will or the death of the testator. Apparently, the particular issue has not previously been decided in this state, but the weight of authority elsewhere seems to favor the view that the statutory definition of the term "heirs at law" in force at the date of the death of the life beneficiary should control. See Annotation 139 A.L.R. 1109, 1112.

▮ It has long been the rule in this state that "all courts and others concerned in the execution of last wills shall have due regard to the directions of the will, and the true intent and meaning of the testator, in all matters brought before them." Section 474.430 RSMo 1949, V.A.M.S. (Sec. 468.620 RSMo 1949, V.A.M.S.); Hereford v. Unknown Heirs, etc., 365 Mo. 1048, 292 S.W.2d 289, 293. The testator's intention must be determined from the whole will and by what the will actually says, that is, the intent of the testator as disclosed by the words of the will itself, if the wording is unambiguous. Housman v. Lewellen, 362 Mo. 759, 244 S.W.2d 21, 23, and cases cited. The testator must be presumed to have intended the legal effect of the language used in the will. This is on the theory that the testator is presumed to know the law. Lounden v. Bollam, 302 Mo. 490, 258 S.W. 440, 441(2).

As indicated the will gave a one-half interest in the property to Robert for life and further provided that if Robert died without issue living, and his brother Charles should survive him, then to Charles for life and "at his death vest absolutely in his heirs at law." Testator could of course devise successive life estates so long as the rule against perpetuities was not violated. Dodd v. McGee, 354 Mo. 644, 190 S.W.2d 231, 232. Appellants contend that "the plan of George Higginbotham's will demonstrates that he desired his land to go to his descendants." One of the reasons assigned is that "he did not even want his sons to be able to alienate the land beyond George Higginbotham's direct line of descendants" (note the last part of the paragraph quoted). Appellants argue that "the idea of having respondent Lottie Higginbotham become a beneficiary would be repugnant to that intention"; that the will was designed to keep the land in the testator's family; and that "the term 'heir' was used by the testator to refer to 'children' * * * children or issue of his sons, Robert and

Charles, to the exclusion of collateral claimants." Appellants cite Gillilan v. Gillilan, 278 Mo. 99, 212 S.W. 348; Fanning v. Doan, 128 Mo. 323, 30 S.W. 1032; Maguire v. Moore, 108 Mo. 267, 273, 18 S.W. 897; Waddell v. Waddell, 99 Mo. 338, 343, 12 S.W. 349; In re Yeater's Trust Estate, Mo.App., 295 S.W.2d 581, none of which are decisive in view of the terms of the will under consideration here.

Appellants' argument is in part answered by what was said in the case of Brock v. Dorman, 339 Mo. 611, 98 S.W.2d 672, 675, as follows: "Defendants' theory is that the testator meant for the property to go to his own descendants. What they overlook is that he did not provide that this land should go to his own 'heirs,' when the life estate terminated as in Reinders v. Koppelman, supra, and similar cases reviewed in the Green case. If he had even said 'children,' or 'descendants,' or 'issue,' or 'heirs of the body' of the life tenant, we would have had a different expression of intention. See Melek v. Curators of University of Missouri, supra; section 14079, RS 1929 (Mo.St.Ann. § 14079, p. 826); In re Estate of Puterbaugh, 261 Pa. 235, 104 A. 601, 5 A.L.R. 1277, and note. The word 'heirs' is a broader and more inclusive term than defendants' construction of it, and what the testator said was that after the death of the life tenant the land was 'to go to his heirs.' As said in the Green case, 'the heirs of the life tenant were to take the estate at (his) death, and to take as (his) heirs—not as heirs of the testator.'" The cases referred to in the Brock case are Reinders v. Koppelman, 94 Mo. 338, 7 S.W. 288; Green v. Irvin, 309 Mo. 302, 274 S.W. 684; Melek v. Curators of University of Missouri, 213 Mo.App. 572, 250 S.W. 614.

In In re Cupples' Estate, 272 Mo. 465, 199 S.W. 556, 558, this court said: "The law of inheritance is the creature of this statute, (of descents.) * * * When adopted children were made heirs under the designation of 'children,' no change in the law of descents became necessary, but

these 'children' took their place automatically by that name in the descending line, and they and their descendants have ever since inherited in that line from the adopting ancestor. * * * The statute of adoption places the adopted child next in the line of descent from the ancestor, of whom, for the purpose of inheritance, he becomes the child and heir * * *."

Directing attention to the specific terms of the will, it will be noted that, in the first devise of each one-half interest in the property, the testator provided for a life estate to a son with a provision that "at his death to pass to and vest in his child or children absolutely should he have children surviving him." However, in each case where a provision for a life estate over is made if the first life tenant dies without issue living, then upon the death of the second life tenant of the particular one-half interest, the will provides, "and at his death vest absolutely in his heirs at law."

When Charles died, January 21, 1956, the applicable statute in force and effect expressly provided: "'Heirs' denotes those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the real and personal property of a decedent on his death intestate." Section 472.010 RSMo 1949, V.A.M.S. And see Section 474.010 RSMo 1949, V.A.M.S., Laws 1955, pp. 385, 462, Sec. 236. While we find no statutory definition of the words "heirs at law", prior to 1955, yet at the time the will was written the said words had a well established legal meaning. In Scudder v. Koeln, 272 Mo. 465, 199 S.W. 556, 557, this court said: "The word 'heir,' in its strict and technical import, applies to the person or persons appointed by law to succeed to the estate in case of intestacy." The court in that case also pointed out that "the right of the Legislature to prescribe the right of descent and inheritance cannot be doubted. It is not a natural right." And see Gardner v. Vanlandingham, 334 Mo. 1054, 69 S.W.2d 947, 950; Krause v. Jeannette Inv. Co., 333 Mo.

509, 62 S.W.2d 890, 894. Testator therefore in using the mentioned general term "heirs at law", and being presumed to know the law, must be presumed to have known that the legislature could by statute, prior to the devise becoming effective, change the course of the descent and distribution of property or change the meaning or definition of the general terms used.

■ We cannot agree that "the plan of George Higginbotham's will demonstrates that he desired his land to go to *his* descendants." The will does not so provide, but in the particular instance under the admitted facts devises the remainder in fee in this one-half interest to the "heirs at law" of the son, Charles.

In support of the contention that the testator is presumed to have known the law and to have expressed his will in the light of the law in effect at the time the will was written, the appellants say that, if testator had asked his lawyer whether if his son Robert died without issue and his son Charles survived and died leaving children and a widow the widow would inherit under the will as written, the answer would have been, "No." That would have been true when the will was written, but not when Charles died January 21, 1956.

Appellant contends that the decisions of this court in "Hays [Hayes] v. St. Louis Union Trust Company, 280 S.W.2d [649] loc. cit. 654, 655, and St. Louis Union Trust Company v. Greenough, 282 S.W.[2d] 474, which * * * involve adoption situations, have held, in this connection, that in Missouri, the law as it existed when the will was written, or at least when the testator died, governs the interpretation of the language of the will and a change in statutes thereafter, does not operate to change the result of what the testator intended." In the Hayes case, the opinion points out that the intention of the testator as disclosed by the terms of the will and the law in effect when the last codicil was written and the will spoke give the same result. See 280 S.W.2d 649, 655 and 282 S.W.2d 474, 482.

Section 2908 RSMo 1899, was in force and effect when the will spoke at testator's death. The section fixed the course of descent of intestate property, as "subject to the payment of his debts and the widow's dower, in the following course: First, to his children, or their descendants, in equal parts; * * *." Other sections fixed the extent of the widow's dower and her right to election dower. Section 474.010, supra, which was in force and effect when Charles died, provided for the descent and distribution of intestate property, "subject to the payment of claims", and "if the intestate is survived by issue * * * or their descendants" one-half to the surviving spouse. And Section 472.010, supra, defined the term "heirs."

As stated, the question here is whether the testator in using the words "heirs at law" of his son in his will intended that such term should be construed according to the existing statute of descent and distribution or according to the statute of descent and distribution in effect when the devise became effective upon the death of the second life tenant of the particular one-half interest in the described land. We find no intent expressed in the will on this issue other than appears from the words used, to wit, "then said real estate shall pass to said Charles Higginbotham for and during his natural life, and at his death vest absolutely in his heirs at law."

■ In determining the rights of respondent, the widow of the second life tenant to take under the will, we must keep in mind that it is not a question of the right of the widow to inherit, that is now fixed by statute, but the question is as to the testator's intention with respect to those who are to share in his estate after the death of the second tenant for life. It must also be remembered that "each will construction case must of necessity be determined upon its own facts and the particular will construed so as to effectuate the testator's intent." St. Louis Union Trust Company v. Greenough, supra, 282 S.W.2d 474, 483. While the widow of a decedent

would not have answered the description of an "heir at law" of such decedent at the time the will was written, or when testator died, yet when the son, Charles, died and the remainder in fee vested, the respondent, as the widow of Charles was one of his "heirs at law" and was within the definition of the words "heirs at law", as "the person or persons appointed by law to succeed to the estate in case of intestacy, which was the definition of the term in testator's lifetime and now. We find nothing in the instant will to indicate an intention on the part of the testator to exclude respondent, as the widow of his son Charles, from the class designated to take the remainder in fee simple upon the death of the son. Also we find no support for appellants' contention that the word "heirs" was used in this will synonymously with "children." Appellants' reference is to other provisions of the will and other terms which indicate no intent and have no bearing upon the particular part of the will which became operative under the particular facts of this case.

Appellants do not cite nor rely upon the case of Leeper v. Leeper, 347 Mo. 442, 147 S.W.2d 660, 133 A.L.R. 586, but the construction which appellants seck to have applied to the will in question in this case is somewhat similar to the construction applied to a deed in the Leeper case, where it was held that, where a change was made in the adoption statute between the time of the execution of the deed and the time of the death of the grantee for life, the meaning of the word "children", as used in such deed in referring to the remaindermen, should be determined according to the law in effect · when the deed was executed, rather than the one in effect at the death of the life tenant.

We think that case may be distinguished on the ground that the term "children" had a definite meaning and was clearly distinguishable from the term "adopted children" when the deed was written. The word "children" used in the deed was very different from the general term "heirs at law" used in this will, with which term we are now concerned, and which term we believe should be construed as having been used by the testator only in the sense as meaning that the remainder should pass under the law of descents and distribution when the event occurred. In other words that the term was intended to mean and did mean only those persons who would answer that description at the time of the death of the second life tenant, at which time the widow was included. Harris Trust & Savings Bank v. Jackson, 412 Ill. 261, 106 N.E.2d 188, 192; In re Angarica's Estate, 157 Misc. 98, 282 N.Y.S. 627, 632.

The only remaining question is appellants' contention that it was not contemplated that any provision of the Probate Code of 1955 be retroactive so as to impair any interest in real estate which had accrued prior to the effective date of the Code. Laws 1955, p. 385, Section 1, subd. 2. As stated, appellants say that the said "saving clause" of the Probate Code of 1955 demands that the interest which accrued at Robert Higginbotham's death be not impaired by operation of changes made by the Code. Robert Higginbotham died in 1935, prior to the adoption of the mentioned Code provisions and appellants were then living, but the question is had any rights accrued to appellants under the will or did they have any vested interest in the described real estate to be impaired by any Code provision.

Appellants argue that "an interest similar to that acquired by plaintiffs at the death of Robert Higginbotham was described in Tapley v. Dill [358 Mo. 824], 217 S.W.2d 369 as a 'vested contingent remainder' and this type of remainder has been held to be an alienable interest in land in Grimes v. Rush [355 Mo. 573], 197 S.W.2d 310," and that "under the rule and discussion in these cases, the interest of plaintiffs under their grandfather's will was most certainly an 'accrued right', whether or not it would have been called a 'vested

remainder' for all purposes and in the technical sense."

The cases cited do not aid appellants. Appellants were not "heirs at law" of their father prior to his death. Gardner v. Vanlandingham, supra, 69 S.W.2d 948, 950. They had no vested or accrued interest in the one-half interest in the real estate in question. The vesting of the fee simple estate in remainder after the life estate was postponed until the termination of the life estate and then vested in the persons who were the heirs of the tenant for life. Brock v. Dorman, supra, 98 S.W.2d 672, 675; Sections 442.490 and 474.470 RSMo, 1949, V.A.M.S., Laws 1955, pp. 385, 470, Sec. 276. The "heirs at law" of appellants' father, Charles, were not ascertained prior to his death on January 21, 1956. Respondent was then an heir at law of Charles and took a one-half interest in the mentioned one-half interest in the property.

The judgment entered should be affirmed. It is so ordered.

All concur.