Bruce E. DAVIS, Trustee of the Marie J. Giffey Testamentary Trust, Plaintiff,

v.

Jennifer NEILSON and Brian Neilson, Appellants,

and

Nancy Joan Byrne, Harry Alan Byrne, Peter Brydon Myers, Carol Burton Myers, III, Alan James Bahan, and Jesse Irwin Gillespie, III, Respondents.

No. WD 47428.

Missouri Court of Appeals,
Western District.

Dec. 28, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1994.

Application to Transfer Denied
March 22, 1994.

---

William Lee Hubbard, Kansas City, for appellants.

Dan Sanders, Kansas City, for respondents.

Before SPINDEN, P.J., and FENNER and HANNA, JJ.

SPINDEN, Presiding Judge.

At issue in this case is whether six adults adopted by Robert Davis Neilson as his children—his secretary and her son, his nephew, and three friends—should be included with Neilson's two natural children in a class of beneficiaries who receive a trust estate. The trust provided that Neilson was to benefit from the estate until he reached age 40 when the residuary was to be distributed to Neilson's issue. The trustee has refused to distribute the residuary to Neilson's adopted children on the theory that the adoptions were shams. The trial court issued a summary judgment ordering that the trust funds be distributed both to Neilson's adopted children and his two natural children. We reverse and remand with instructions.

On October 3, 1968, Marie J. Giffey executed a will directing that her estate, after specified bequests, be placed in a trust in two portions: One-third of the estate was to benefit the children of her son, Hunter P. Davis, and two-thirds were to benefit Neilson. Giffey directed that Neilson receive from the trust until it was terminated—either when Hunter Davis died or when Neilson attained age 40, on August 5, 1992, depending on which occurred last. The will mandated that upon termination of that portion of the trust, its remaining principal and accumulated income was to be distributed "absolutely and free and clear of all trusts to the issue, per stirpes, of my ... grandson, ROBERT DAVIS NEILSON[.]" The will defined "issue" as including "an adopted child or children."

When she executed the will, Giffey resided in Mission Hills, Kansas. She still lived there when she died on December 27, 1977. Missouri attorneys prepared the will in Missouri. Giffey signed the will in Missouri, and it was witnessed in this state. In the will, Giffey said, "I request and direct so far as possible that my estate be administered in the State of Missouri, and, further, that so

far as possible the trusts established under this will be administered in the State of Missouri." Most of the trusts assets were in Missouri.

In 1992, Neilson had two natural children, Jennifer and Brian, who were minors living with Neilson's former wife in Kansas. Neilson was a lawyer living in Florida. Just before his fortieth birthday, in April and May 1992, he adopted six adults as his children. The record suggests [1] that the adoptees were total strangers to the settlor; none lived with Neilson in any sort of family arrangement; and only his secretary, Nancy Joan Byrne, received any financial support from him. On April 14 he adopted his secretary's son, Harry Alan Byrne (born on July 9, 1968) who was living in Oklahoma. On April 27 he adopted his secretary (born on February 7, 1943). The next day he adopted an acquaintance living in Florida, Carl Burton Myers, III (born on May 5, 1945). On May 4 he adopted his nephew living in California, Jessie Irwin Gillespie, III. On May 7 he adopted another acquaintance living in Florida, Peter Brydon Myers (born on April 28, 1949) and on May 13 he adopted Alan James Bahan (born on August 29, 1946), an acquaintance and Florida resident. Nancy Byrne, Peter Myers, Carl Myers and Alan Bahan are older than Neilson. At least two of the adoptees were married. Each adoptee retained his or her surname.

After Neilson's fortieth birthday, the trustee refused to distribute the trust estate, valued variously by the parties at between $1 million and $2.5 million, because of Neilson's adoptions. The trustee filed a declaratory judgment action seeking the trial court's determination of whether Neilson's adopted children were heirs of Giffey's estate. The natural children answered that they were the only heirs because the adoptions violated the settlor's intent. The adopted children asserted that, because the trust was clear and unambiguous, they should be given a summary judgment declaring them to be heirs

along with the natural children. Later the natural children requested permission to amend their pleading to allege fraud by Neilson, and the parties disputed whether Missouri or Kansas law should govern. The trial court decided that the nature of the adoptions and the conflict of laws issue were irrelevant because Missouri and Kansas recognize adult adoptions as valid regardless of an adopter's motive. The trial court refused to permit the amendment and concluded that because Giffey's will unambiguously included Neilson's adopted children, the court should grant the adopted children's motion for summary judgment. The trial court erred.

■ We conclude that Missouri law governs in this case. Section 456.234, RSMo 1986, says, "The meaning of a disposition in an instrument creating ... a trust shall be determined by the local law of a particular state selected by the settlor in his instrument unless the application of that law is contrary to the public policy of this state otherwise applicable to the disposition." See *Spicer v. New York Life Insurance Company*, 237 Mo. App. 725, 167 S.W.2d 457, 467 (1942).

Although Giffey was domiciled in Mission Hills, Kansas, she intended for Missouri law to govern distribution of her trust assets. Whenever Giffey expressed an intent as to which law should govern, she chose Missouri law. She directed that her will, and the trusts it established, be administered in Missouri. She commanded that the Missouri law govern distribution of the trust assets in the case that "on final termination of the last of all of the trusts ... there shall be no issue of mine living[.]" Missouri has substantial connection with the trust and its assets. Most of the assets are in this state. Giffey signed the will here, and it was witnessed here.

Missouri is among more than 40 states which permit an adult adoption.[2] Section 453.060.5, RSMo 1986, recognizes that a "person sought to be adopted" may be "eighteen years of age or older." The Supreme Court of Missouri instructed long ago, "The

---

1. Because this matter comes to us on the basis of the trial court's granting summary judgment, the record is lacking in many details of the circumstances surrounding Neilson's adoptions.

2. Notes, Adult Adoption, 1972 Wash.L.Rev. 253 (1972); Walter Wadlington, Adoption of Adults: A Family Law Anomaly, 54 Cornell L.Rev. 566 (1969) (lists statutes of 43 states and the District of Columbia).

law has placed no limitation as to the age of the child to be adopted, and there is no reason why such a restriction should be placed on the choice of the adopting parent." *In re Moran's Estate*, 52 S.W. 377, 378 (Mo. 1899) (involving adoption of 22–year–old). This law has not changed. *First National Bank of Kansas City v. Sullivan*, 394 S.W.2d 273 (Mo.1965); *Goldberg v. Robertson*, 615 S.W.2d 59 (Mo.1981).

Adult adoptions in estates and trusts cases have been rife with controversy.[3] This controversy has led to three lines of cases among the jurisdictions in deciding the effect of an adult adoption on the construction of a testamentary instrument. The oldest line presumes all adult adoptees to be included in class gifts to children.[4] A second line presumes all adult adoptees to be excluded from class gifts to children.[5] A third line takes the middle ground by allowing exceptions to presumptive inclusion or exclusion depending on particular circumstances.[6] We conclude that Missouri belongs in the third line.

■ Although Missouri adoption statutes recognize adult adoptions, statutes do not directly govern an adopted child's right to inherit from a will. The testator's intent governs. Whether an adopted child takes under a devise varies from case to case according to the testator's intent as determined by construction of the whole will in light of surrounding circumstances. *First National Bank of Kansas City v. Sullivan*, 394 S.W.2d 273 (Mo.1965); *Brock v. Dorman*, 339 Mo. 611, 98 S.W.2d 672 (1936).

■ We have no doubt that Giffey intended to include adopted children in the class to receive the residuary of her trust. She mandated that the trust residuary be distributed to Neilson's "issue," and she provided that issue "may include an adopted child or children." We also conclude, from her command that " '[i]ssue' as used herein means lawful issue," that she intended to include adult's within the provision for adopted children. Missouri has recognized adopted adults as heirs for about 100 years.

The trial court erred, however, in concluding that this resolved all of the questions before it. Unanswered is whether the trial court should have presumed Giffey to have intended to include within the gift class the particular adults adopted by Neilson—persons with whom Neilson had no apparent prior family relationships.

Common sense answers the question. "[C]ommon sense tells us that a donor would normally expect anyone partaking of his bounty to be a true family member and not just some willing adult adopted for the purpose of reducing or defeating a gift-over to others." Jan Ellen Rein, Relatives by Blood, Adoption, and Association: Who Should Get What and Why, 37 Vand.L.Rev. 711, 758 (1984). Common sense tells us that Giffey, by inserting adopted children into the class she described as Neilson's "issue,"[7] intended to include only individuals with some familial bond to her family—individuals to whom Neilson felt a familial bond of love and duty, such as adult stepchildren.

---

3. Kentucky cases have been especially controversial. *Minary v. Minary*, 395 S.W.2d 588 (Ky. 1965) (husband adopted wife); *Pennington v. Citizen's Fidelity Bank & Trust Co.*, 390 S.W.2d 671 (Ky.1965) (wife adopted husband); *Bedinger v. Graybill's Ex'r and Trustee*, 302 S.W.2d 594 (Ky. 1957) (husband adopted wife); and *Greene v. Fitzpatrick*, 220 Ky. 590, 295 S.W. 896 (1927) (lawyer adopted secretary-mistress who was married).

4. Included in this line are *In re Estate of Fortney*, 5 Kan.App.2d 14, 611 P.2d 599 (1980); *Evans v. McCoy*, 291 Md. 562, 436 A.2d 436 (1981); *Delaney v. First Nat'l Bank of Albuquerque*, 73 N.M. 192, 386 P.2d 711 (1963); and *Matter of Chemical Bank*, 90 Misc.2d 727, 395 N.Y.S.2d 917 (Sup.Ct.1977).

5. Included in this line are *In re Estate of Nicol*, 152 N.J.Super. 308, 377 A.2d 1201 (1977), and *In re Estate of Tafel*, 449 Pa. 442, 296 A.2d 797 (1972).

6. Included in this line are *First Nat'l Bank of Dubuque v. Mackey*, 338 N.W.2d 361 (Ia.1983); *Estate of Pittman*, 104 Cal.App.3d 288, 163 Cal. Rptr. 527 (1980); *Chichester v. Wilmington Trust Co.*, 377 A.2d 11 (Del.1977); and *Minary v. Citizens Fidelity Bank & Trust Co.*, 419 S.W.2d 340 (Ky.1967).

7. "[T]he word 'issue' prima facie means blood issue." *Kindred v. Anderson*, 357 Mo. 564, 209 S.W.2d 912, 918 (1948).

The trial court looked to the leading case in this area, *Brock*, 98 S.W.2d at 672, and concluded that lack of familial ties was irrelevant. Indeed, the Supreme Court, considering whether a 43–year–old adoptee should be included in a class gift to "heirs," said:

> It is ... wholly immaterial how, or because of what events, actions, or occurrences, [a] remainderman came to be within that designation. The testator was content that the remainderman should be the person upon whom the laws on descents would cast inheritance from the life tenant, when the life tenant died; and that inheritance would have been cast, by the law in effect when he wrote the will, upon [the adopted adult heir] if she had been adopted under the statute of adoption then in force.

*Id.* at 676.

Nonetheless, our conclusion that only individuals with familial ties to the adopting parent should be presumed to be included in the gift class is consistent with *Brock*. As the *Brock* court emphasized, the other heirs challenging inclusion of the adoptee did not contend that the adoption was invalid "or that the relationship of parent and child did not exist between [the adopted adult] and [the adopting parent.]" *Id.* The trial court in *Brock* heard evidence that the adult had been adopted because she had lived with the adopting parents at intervals during her childhood and that they thought of her as a daughter.

Inquiry into the motives behind an adoption should indeed be irrelevant, as the *Brock* court said, if the court presumes the testator to have included in his or her gift class only individuals who would be a natural object of his or her bounty, an issue not addressed in *Brock*. Even if a desire to make the adoptee qualify as a beneficiary motivated the adoption, that motive is immaterial so long as the courts presume a testator to include within a gift class only persons who have a familial tie to the testator's family. Restricting the presumption of inclusion to only individuals who are the natural object of the testator's bounty should be sufficiently effective in sifting the bounty hunters from the class.

The Supreme Court of Missouri has instructed, "One of the most telling circumstances in determining an intended beneficiary, when there is some doubt about it, is the relationship of the testator to the beneficiary." *Gannett v. Shepley*, 351 Mo. 286, 172 S.W.2d 857, 861 (1943). This court's Eastern District said, in *Lynn v. Stricker*, 213 S.W.2d 672, 675 (1948):

> In determining the question before us, our sole consideration is to ascertain the intention of testator as expressed in the will. This intention must be found from the words used in the will, considered in connection with the testator's circumstances and surroundings, his relations to or associations with the persons who were the objects of his bounty, the nature, extent, situation, and amount of his property, and the motives which could reasonably have actuated the testator in the disposition of his property.

■ Because the trial court did not make such a determination, we reverse its summary judgment and remand for further proceedings. As the trial court seeks to determine whether the persons adopted by Neilson have the familial ties we conclude are necessary, we suggest that the trial court look to several factors: whether the adopter has assumed responsibility for the adoptee; whether the adoptee has taken the adopter's surname; whether the adoptee entered the adopter's home, and, if so, at what age; the length of time the adopter and adoptee lived together; and the nature and extent of adopter's and adoptee's parent-child relationship.

All concur.