BOATMEN'S TRUST COMPANY, as Trustee of the Trust created under the Last Will and Testament of Ewing Hill, Plaintiff–Respondent,

v.

Sharon Lynn CONKLIN and Allen Thomas Coker, Defendants–Appellants,

and

Citizens Commercial Trust and Savings Bank of Pasadena, as temporary Administrator with the Will Annexed of Franklin Kauffman Hill; et al., Defendants–Respondents.

No. 64967.

Missouri Court of Appeals, Eastern District, Division Three.

Nov. 8, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 14, 1994.

**348**

Stuart Oelbaum, Nichols & Challis, St. Louis, for appellants.

William G. Guerri, Nicholas J. Lamb, Stephen R. Welby, Thompson & Mitchell, St. Louis, William A. Richter, Peper, Martin, Jensen, Maichel & Hetlage, St. Louis, Charles Appleton Redd, Ann Elizabeth Buckley, Michael L. Skinner, Armstrong, Teasdale, Schlafly & Davis, St. Louis, Marvin M. Klamen, Clayton, for defendants-respondents.

Franklin F. Wallis, Kathleen R. Sherby, Richard O. Kissel, II, Bryan Cave, St. Louis, for plaintiff-respondent.

SIMON, Presiding Judge.

Appellants, Sharon Lynn Conklin and Allen Thomas Coker, two of several defendants in the underlying action for instructions on the distribution of a testamentary trust brought by Trustee, respondent Boatmen's Trust Company, appeal from an order granting the motion for summary judgment of respondents Georgiana Oliver deMonter, et al. (deMonter respondents), granting the motion for summary judgment of respondents Jeffrey Dupuis Hill, et al. (Hill respondents), granting in part the motion for summary judgment of respondents Michael John Holmes, et al. (Holmes respondents), and denying appellants' motion for summary judgment.

In their three points on appeal, appellants claim the trial court erred in: (1) denying appellants' motion for summary judgment because, as a matter of law, the term "issue of surviving child" includes adopted children and therefore appellants are entitled to receive the assets of the testamentary trust; (2) denying the alternative portion of appellants' motion for summary judgment because even if appellants are not Ewing Hill's issue, they are his heirs at law; and (3) considering evidence of Ewing Hill Buysse's motives for adopting Margaret Gammon and appellants Conklin and Coker because such evidence is irrelevant to determining and effectuating the intent of Ewing Hill. In their brief, respondents assert that they are entitled to have their costs and expenses for this appeal paid from Trust assets prior to distribution. We affirm in part, and reverse and remand in part with directions.

On May 14, 1911, Ewing Hill (Testator) executed his will (the Will) stating in pertinent part:

THIRD: I give and bequeath to the St. Louis Union Trust Company [now Boatmen's Trust Company], a corporation of the City of St. Louis, Missouri, and to my daughter, Florence Hill Buysse, as Trustees, the sum of One Hundred Thousand Dollars ($100,000), to be held in trust for ... benefit of my said daughter during her natural life,.... Upon the death of my said daugh[t]er, said trust estate shall continue in trust in the hands of said St. Louis Union Trust Company for and during the natural lives of the children of my said daughter who may be living at the time of my decease, such children to share equally in the income derived from said trust estate. Upon the death of any child of my said daughter participating in this trust,

leaving issue, such issue shall take parent's share of said trust estate. Upon the death of such child of my said daughter, without issue, the surviving child or children shall take the share of the one so dying. Upon the death of all of the children of my said daughter participating in this trust without leaving issue surviving, then the trust estate shall pass to my heirs-at-law.

Testator died in St. Louis on, or about January 7, 1912, survived by his wife, Octavia Cobb Hill, and his four children, Florence Hill Buysse also known as Florence Hill Oliver (Florence Hill Buysse), Ewing Hill Jr., Daniel Augustine Hill, and Charles Van Dyke Hill. Under Article FOURTH of the Will, Testator created a trust for the benefit of his wife for her life, with three-fourths of that remainder to be paid to his three sons, and one-fourth to be added to the trust created by Article THIRD (the Trust) for the benefit of his daughter, who also received bequests of $10,000.00 and fifteen shares of stock or $25,000.00. Testator's three sons also received specific bequests under the Will.

Upon her death in 1966, Florence Hill Buysse was survived by two children, Octavia Hill Buysse and Ewing Hill Buysse (born circa 1911), who were alive at Testator's death, and by a third child, George Hill Oliver, who was born after Testator's death. At that time, Octavia Hill Buysse and Ewing Hill Buysse became the income beneficiaries of the Trust, and Boatmen's Trust Company, formerly known as Centerre Trust Company and prior to that St. Louis Union Trust Company, became the sole trustee of the Trust (Trustee). (George Hill Oliver did not become an income beneficiary because he was not living at the time of Testator's death pursuant to Article THIRD of the Will.)

In 1966, Ewing Hill Buysse was 55 years old, had been married for nine years to the former Josefine Verdun (Mrs. Ewing Hill Buysse), and had no natural or adopted children. On December 20, 1966, Ewing Hill Buysse adopted Margaret Gammon, who was then 54 years old. On or about July 6, 1969, Octavia Hill Buysse died without leaving issue, and Ewing Hill Buysse became the sole income beneficiary of the Trust. In 1978, Ewing Hill Buysse adopted appellants Shar-

on Lynn Conklin, then 37 years old, and Allen Thomas Coker, then 42 years old. Appellant Conklin is the daughter of Mrs. Ewing Hill Buysse by a previous marriage, and appellant Coker is not a blood relation of either Ewing Hill Buysse or his wife. In 1989, Margaret Gammon died, leaving no surviving descendants. On April 26, 1990, Ewing Hill Buysse died, survived by Mrs. Ewing Hill Buysse, appellant Conklin, and appellant Coker.

Subsequently, Trustee filed a petition and later an amended petition seeking instructions regarding the manner in which the Trust assets should be distributed and to whom. Specifically, Trustee sought a determination as to whether appellants are the "issue" of Ewing Hill Buysse as that term is used in the Trust, and in the event appellants are not "issue," Trustee sought a determination as to how the "heirs-at-law" of Testator are to be determined pursuant to Article THIRD.

The following were defendants in the underlying action and are now respondents: Citizens Commercial Trust and Savings Bank of Pasadena as the temporary administrator with the will annexed of Franklin Kauffman Hill, who is the deceased son of Daniel Augustine Hill and a grandson of Testator, and who died after Ewing Hill Buysse, leaving no issue; Joyce Hill Atkinson, who is the surviving daughter of Charles Van Dyke Hill and a granddaughter of Testator; Jeffrey Dupuis Hill and Judith Hill Cooke, who are the surviving children of Edward Lewis Hill, deceased son of Charles Van Dyke Hill, and are great-grandchildren of Testator; Georgiana Oliver deMonter, Mary P.C. McKechnie, and Hope Oliver, who are the surviving children of George Hill Oliver, deceased son of Florence Hill Buysse, and are great-grandchildren of Testator; and Michael John Holmes and Kathryn R. Marion, who are the surviving children of Michael H. Holmes, deceased son of Kathryn Octavia Hill Holmes who is the deceased daughter of Daniel Augustine Hill, and are great-great grandchildren of Testator.

On January 24, 1992, the deMonter respondents filed their motion for summary judgment in which they asserted appellants

are not issue of Ewing Hill Buysse, and that the Trust estate is not distributable to them.

On March 30, 1992, appellants filed a motion for summary judgment, in which they asserted that appellants are "issue" of Ewing Hill Buysse or, alternatively, "heirs-at-law" of Testator.

On May 12, 1992, the Hill respondents filed their motion for summary judgment contending that appellants are not "issue" of Buysse, and that Testator's "heirs-at-law" are to be determined under the laws of descent and distribution in effect when Testator executed the Will in 1911 and ascertained as of the death of Ewing Hill Buysse in 1990.

On June 29, 1992, the Holmes respondents filed their motion for summary judgment, asserting that appellants are neither "issue" nor "heirs-at-law" under the Will, and that the "heirs-at-law" under the Will should be determined as of the date of Testator's death in 1912.

After a hearing, the trial court issued its findings of fact, conclusions of law, and order on October 15, 1993. In its single paragraph order, the trial court denied appellants' motion for summary judgment, granted the deMonter respondents' and Hill respondents' motions for summary judgment, and granted in part and denied in part the Holmes' respondents motion for summary judgment. We note that appellants' first and second points are directed to the denial of their summary judgment motion, which is not a final appealable judgment. *See Clooney v. Pre–Paid Legal Services, Inc.*, 830 S.W.2d 566, 566–7[1–3] (Mo.App.1992). It is obvious that their points are unartfully drawn, but their arguments are properly directed to the granting of respondents' summary judgment motions. To protect the substantial rights of the parties and to avoid an injustice, we shall exercise our discretion and review appellants first and second points. In its findings of fact, the trial court stated in pertinent part:

9. On December 20, 1966, [Ewing Hill] Buysse adopted Margaret Gammon, a family friend who was then 54 years old. Two days after the adoption, [Ewing Hill] Buysse wrote Boatmen's regarding the adoption, and stated:

In view of the provisions of the Will of my respected grandfather, Ewing Hill, in consideration of the uncertainties of life and bearing in mind my desire to further protect and provide for those dear to me the foregoing Adoption was consumated (sic).

\*    \*    \*    \*    \*    \*

11. On or about July 12, 1969, [Ewing Hill] Buysse again wrote to Boatmen's, and discussed his adoption of Margaret Gammon:

My action regarding adoption of a lifelong friend of [my wife] and myself was—as you may well realize—predicated on the basis of the hope that the Missouri Courts might rule favorably regarding the term "issue" and thus provide some degree of financial protection (via our adoptee) to my dear wife ... who would otherwise be excluded from even a small participation in a vast fortune.

In its conclusions of law, the trial court stated that there is no evidence that Testator intended the word "issue" to signify other than the well-established meaning it had in 1911, which excluded adopted children, and that appellants Conklin and Coker, as adoptees of Ewing Hill Buysse, are not his "issue" within the meaning of the Will. The court also stated there is no evidence that Testator intended the term "heirs-at-law" to mean other than its well-established technical meaning in 1911, which excluded adopted children, and that Conklin and Coker, as adoptees of Ewing Hill Buysse, are not Testator's heirs-at-law. Finally, the court stated that the Will evidences the intention that Testator's heirs-at-law be those persons answering that description at the death of the last life tenant, Ewing Hill Buysse, in 1990. Additionally, the court found that all parties making an appearance are entitled to their reasonable attorneys' fees from the trust estate.

Our review is essentially *de novo*. *ITT Commercial Finance v. Mid–America Marine Supply*, 854 S.W.2d 371, 376[6] (Mo. banc 1993). The criteria on appeal for testing the propriety of summary judgment are

no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. *Id.* The propriety of summary judgment is purely an issue of law. *Id.* As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment. *Id.*

In their first point, appellants contend the trial court erred in denying their motion for summary judgment because, as a matter of law, the term "issue of a surviving child" includes adopted children and, therefore, appellants are entitled to receive the assets of the Trust.

In construing the rights of an adopted child to take under a will, it is not a question of the right of an adopted child to inherit, but simply a question of the testator's intention with respect to those who are to share in his estate. *First National Bank of Kansas City v. Sullivan,* 394 S.W.2d 273, 281[6] (Mo.1965). In the quest for the testator's intention, we consider the surrounding circumstances. *Id.* at 281[7]. Generally, whether an adopted child is embraced within the meaning of a described class of beneficiaries in a will is governed by the law in force at the time the will or other instrument was executed. *Id.* The Testator's intention at the time of the execution of the Will is determinative. *Ratermann v. Ratermann,* 405 S.W.2d 891, 894[2] (Mo.1966). When Testator executed his Will, the term "issue" had a well-known meaning, referring to and applying to "a child of the blood" and did not include adopted children. *See id.* at 895[5]. There is nothing in the Will or in its surrounding circumstances indicating Testator intended a different definition of the term "issue," *see id.*, and therefore, the trial court did not err in granting respondents' motions for summary judgment.

In their second point, appellants contend that the trial court erred in denying the alternative portion of their motion for summary judgment because even if appellants are not Testator's issue, they are Testator's heirs at law.

Instructive is *Thomas v. Higginbotham,* 318 S.W.2d 234 (Mo.1958). In *Higginbotham,* George W. Higginbotham, testator, owned certain real estate, and died in 1905 survived by his two sons, Charles Higginbotham and Robert Higginbotham. *Id.* at 236. Testator's will stated:

Fourth. All my Real Estate ... I give devise and dispose of as follows, to-wit: To my said son Robert Higginbotham I give and devise the undivided one half of all my Real Estate to have and to hold, use and enjoy for and during his natural life, and at his death to pass to and vest in his child or children absolutely should he have children surviving him. But in the event he shall die without issue living, and his brother Charles Higginbotham shall survive him, then said real estate shall pass to said Charles Higginbotham for and during his natural life, and at his death vest absolutely in his heirs at law.

To my said son Charles Higginbotham I give and devise the other undivided one half of all my real estate, to have and to hold, use and enjoy for and during his natural life, and at his death to pass to and vest in his child or children absolutely should he leave a child or children surviving him, but in the event he shall die without issue living and his brother Robert Higginbotham shall survive him, then said real estate shall pass to said Robert Higginbotham for his natural life, and at his death vest absolutely in his heirs at law. In the event both of my said sons, the said Charles Higginbotham and Robert Higginbotham shall die without leaving issue, then all of said real estate shall pass to and vest absolutely, at the death of the survivor of them, in the heirs at law of the survivor of them....

*Id.* Robert Higginbotham died in 1935 and he was survived by no issue. *Id.* Charles Higginbotham died January 21, 1956, survived by his widow, Lottie Higginbotham, defendant, and by two children, Willa Thomas and Verlie Ingram, plaintiffs. *Id.* Plaintiffs brought action to quiet and determine title to the real estate, and defendant filed a cross-action to quiet and determine title to an undivided one-fourth interest in the real estate. *Id.* The trial court found that plaintiffs were the owners of an undivided three-

fourths interest and defendant the owner of an undivided one-fourth interest in the property and entered judgment accordingly. *Id.* Plaintiffs appealed contending that testator's widow took no interest in the real estate described in the will because testator is presumed to have known the law and to have expressed his will in the light of the law in effect at the time of his death, and at that time, the spouse of a life tenant would not have been the life tenant's "heir." *Id.* at 237.

In affirming, our Supreme Court stated:

The issue presented is whether the determination as to what persons should be entitled to take under the devise in the will to the "heirs at law" of the second life beneficiary, Charles Higginbotham, is governed by the statutory definition in force at the date of the death of Charles, rather than that in effect at the time of the execution of the will or the death of testator. Apparently, the particular issue has not previously been decided in this state....

\*   \*   \*   \*   \*   \*

In *In re Cupples' Estate[. Scudder v. Koeln]*, 272 Mo. 465, 199 S.W. 556, 558 [ (1917) ], this court said: "The law of inheritance is a creature of this statute, (of descents.) \* \* \* When adopted children were made heirs under the designation of 'children,' no change in the law of descents became necessary, but these 'children' took their place automatically by that name in the descending line, and they and their descendants have ever since inherited in that line from the adopting ancestor. \* \* \* The statute of adoption places the adopted child next in line of descent from the ancestor, of whom, for the purpose of inheritance, he becomes the child and heir \* \* \*."

\*   \*   \*   \*   \*   \*

When Charles died, January 21, 1956, the applicable statute in force and effect expressly provided: " 'Heirs' denotes those persons, including the surviving spouse, who are entitled under the statutes of intestate succession to the real and personal property of a decedent on his death intestate." While we find no statutory definition of the words "heirs at law", prior to 1955, yet at the time the will was written the said words had a well established legal meaning. In [*In re Cupples' Estate*, 199 S.W. at] 557[–58], this court said: "The word 'heir,' in its strict and technical import, applies to the person or persons appointed by law to succeed to the estate in case of intestacy." The court in that case also pointed out that "the right of the Legislature to prescribe the right of descent and inheritance cannot be doubted. It is not a natural right." [*Id.* at 557.] Testator therefore in using the mentioned general term "heirs at law", and being presumed to know the law, must be presumed to have known that the legislature could by statute, prior to the devise becoming effective, change the course of the descent and distribution of property or change the meaning or definition of the general terms used.

\*   \*   \*   \*   \*   \*

As stated, the question here is whether the testator in using the words "heirs at law" of his son in his will intended that such term should be construed according to the existing statute of descent and distribution or according to the statute of descent and distribution in effect when the devise became effective upon the death of the second life tenant of the particular one-half interest in the described land. We find no intent expressed in the will on this issue other than appears from the words used, to wit, "then said real estate shall pass to said Charles Higginbotham for and during his natural life, and at his death vest absolutely in his heirs at law."

\*   \*   \*   \*   \*   \*

While the widow of a decedent would not have answered the description of an "heir at law" of such decedent at the time the will was written, or when testator died, yet when the son, Charles, died and the remainder in fee vested, the respondent, as the widow of Charles was one of his "heirs at law" and was within the definition of the words "heirs at law", as "the person or persons appointed by law to succeed to the estate in case of intestacy,["] which was the definition of the term in testator's lifetime and now. We find nothing in the

instant will to indicate an intention on the part of the testator to exclude respondent, as the widow of his son Charles, from the class of designated to take the remainder in fee simple upon the death of the son. *Id.* at 237, 238–40[4–6] (citations omitted).

■ Here, the issue presented is whether the determination of the persons entitled to take the Trust estate as Testator's "heirs-at-law" is governed by the statutory definition in force at the date of Ewing Hill Buysse's death, rather than that in force at the time of the execution of the Will or the death of the Testator. The Will states in Article THIRD that "[u]pon the death of all the children of my said daughter participating in this trust without leaving issue surviving, then the trust estate shall pass to my heirs-at-law." When Testator executed his Will and when he died, § 2908 R.S.Mo.1899 was in force and effect, and it fixed the course and descent of intestate property "in the following course: First, to his children, or their descendants, in equal parts...." The right of the legislature to prescribe the right of descent and inheritance cannot be doubted, and it is not a natural right. *Id.* at 238[4]. The word "heir," in its strict and technical import, applied to the person or persons appointed by law to succeed to the estate in case of intestacy. *Id.* Further, our Supreme Court declared that the terms "heirs at law" and "lawful heirs" invariably referred to the heirs upon whom descent is cast by law and "not to an heir by adoption." *Hockaday v. Lynn,* 200 Mo. 456, 470–71, 98 S.W. 585, 588–89 (1906) (quoting *Reinders v. Koppelman,* 94 Mo. 338, 342–43, 7 S.W. 288, 289–90 (1888)). However, Testator, in using the general term "heirs-at-law" and being presumed to know the law, must be presumed to have known that the legislature could by statute, prior to the devise becoming effective, change the course of the descent and distribution of property or change the meaning or definition of the general terms used in the Will. *See Higginbotham,* 318 S.W.2d at 239[4]. In 1917, the legislature enacted a statute providing that when a child is adopted, such child shall be capable of inheriting from the adopting parents "as fully as those born to them in lawful wedlock." § 1101 R.S.Mo. 1919. Our Supreme Court ruled that under this statute, the adopted child is taken out of the blood stream of his or her natural parents and placed, by operation of law, in the blood stream of his or her adopting parents. *See St. Louis Union Trust Co. v. Hill,* 336 Mo. 17, 76 S.W.2d 685, 689[6] (1934); *In re Cupples' Estate,* 199 S.W. at 558[10]. Our Supreme Court has reaffirmed this ruling several times as noted in *Vreeland v. Vreeland,* 296 S.W.2d 55, 58–59[8] (Mo.1966), where the court stated that "an adopted child has the same rights as a natural child...."

When Ewing Hill Buysse died in 1990, § 474.010 R.S.Mo.1986 (all further statutory references shall be to R.S.Mo.1986 unless otherwise indicated) was in full force and effect providing in pertinent part:

**General rules of descent.**

\*   \*   \*   \*   \*   \*

(2) The part not distributable to the surviving spouse, or the entire intestate property, if there is no surviving spouse, shall descend and be distributed as follows:

(a) To his children, or their descendants, in equal parts....

This statute is essentially the same as the one governing intestacy at the time Testator executed the Will and when he died. *Compare* § 2908 R.S.Mo.1899.

Further, the definitions section of the probate code, § 472.010, provides in pertinent part:

(2) **"Child"** includes an adopted child ...;

\*   \*   \*   \*   \*   \*

(14) **"Heirs"** means those persons ... who are entitled under the statutes of intestate succession to the real and personal property of a decedent on his death intestate;

\*   \*   \*   \*   \*   \*

(16) **"Issue"** of a person, when used to refer to persons who take by intestate succession, includes adopted children ...;

\*   \*   \*   \*   \*   \*

(22) **"Lineal descendants"** include adopted children....

It is not disputed that Ewing Hill Buysse's "heirs at law" are to be identified as of the time of Ewing Hill Buysse's death. *See Graves v. Hyer,* 626 S.W.2d 661, 666[3] (Mo. App.1981). We must remember that it is not a question of the rights of appellants to inherit that was fixed by statute when Ewing Hill Buysse died in 1990, but the question is whom did the Testator intend to share in his estate after the death of all of the children of his daughter. *See Higginbotham,* 318 S.W.2d at 239[6]. Each case must be determined upon its own facts and the particular will must be construed so as to effectuate the testator's intent. *Id.*

Here, it is undisputed that at the time the Will was executed and when Testator died, appellants would not have been included in the category of Testator's "heirs-at-law." It is also undisputed that when Ewing Hill Buysse died, appellants were adoptees of Buysse; thus, at that time, they were within the definition of the word "heirs" as "those persons ... who are entitled under the statutes of intestate succession...." § 472.010(14). Keeping in mind the Testator is presumed to know the law and that the legislature could by statute change the course of descent and distribution of property, it is significant that Testator did not make any limitation to the term "my heirs-at-law." *See id.* at 239[4]. Testator's use of "my" does not indicate an intention to limit his "heirs-at-law" to his bodily heirs. *See Stifel v. Butcher,* 487 S.W.2d 24, 38–39 (Mo.1972). Further, we note that our Supreme Court declared long ago the words "children," "issue," and "heirs" are not synonymous terms, *Clarkson v. Hatton,* 143 Mo. 47, 44 S.W. 761, 762 (1898), and we find no intention on the part of the Testator to use these words interchangeably. Additionally, the mere fact that Ewing Hill Buysse, born circa 1911, was alive at the time of Testator's death does not warrant our saying that the Testator in using without qualification the term "heirs-at-law" used it in the sense of his grandchildren. *See Brock v. Dorman,* 339 Mo. 611, 98 S.W.2d 672, 675[5] (1936) (quoting *Green v. Irvin,* 309 Mo. 302, 310, 274 S.W. 684, 687 (1925)). We find nothing in the Will or in its surrounding circumstances to indicate an intention on the part of Testator to exclude adoptees and, thus, the trial court erred in granting respondents' motions for summary judgment.

In their third point, appellants assert the trial court erred in considering evidence of Ewing Hill Buysse's motives for adopting Margaret Gammon and appellants Conklin and Coker because such evidence is irrelevant to determining and effectuating the intent of Ewing Hill.

■ The record indicates that in its findings of fact, the trial court quoted two letters that Ewing Hill Buysse wrote to Trustee on December 22, 1966 and July 12, 1969 following the adoption of Margaret Gammon on December 20, 1966 and prior to the adoptions of appellants Conklin and Coker, essentially explaining that he adopted Margaret Gammon in order to provide financial protection for "those dear to me" and "my dear wife." Margaret Gammon predeceased Ewing Hill Buysse leaving no descendants surviving her, and Mrs. Ewing Hill Buysse survived her husband.

The test for relevancy is whether an offered act tends to prove or disprove a fact in issue or corroborates other evidence. *Kansas City v. Keene Corp.,* 855 S.W.2d 360, 367[7] (Mo. banc 1993).

As we already have found that nothing in the Will or in its surrounding circumstances indicate an intention on the part of Testator to exclude adoptees, the question now presented is whether evidence concerning Ewing Hill Buysse's motives in adopting appellants is admissible to show whether appellants are Testator's "heirs-at-law." Instructive is *Davis v. Neilson,* 871 S.W.2d 35 (Mo.App. W.D.1993). In *Davis,* testatrix's will directed that her estate, after specified bequests, be placed in trust in two portions: one-third of the estate to benefit the children of her son Hunter P. Davis, and two-thirds to benefit her grandson Robert Davis Neilson (Neilson). *Davis,* 871 S.W.2d at 36. Testatrix directed that Neilson receive from the trust until it was terminated when Hunter P. Davis died or when Neilson attained age 40 on August 5, 1992, whichever occurred last. Upon termination of Neilson's portion of the trust, its remaining principal and accumulat-

ed income was to be distributed to the issue of Neilson. The will defined "issue" as including an adopted child or children. Testatrix died in 1977. *Id.* In 1992, Neilson, at that time an attorney, had two natural children who were minors living with his former wife. *Id.* at 37. In April and May of 1992, shortly before his fortieth birthday, Neilson adopted six adults as his children. According to the record on appeal, the adoptees were strangers to the testatrix, and none lived with Neilson "in any sort of family arrangement." *Id.* Four of the adoptees were older than Neilson, two were married, and all retained his or her surname. After Neilson's fortieth birthday, the trustee refused to distribute the trust estate because of Neilson's adoptions, and filed a declaratory judgment action seeking a determination of whether Neilson's adopted children were heirs of testator's estate. Although not stated expressly by the *Davis* court, it is implicit from the trustee's refusal to distribute the trust estate that Hunter P. Davis' death occurred before Neilson's fortieth birthday. Neilson's natural children answered that they were the only heirs because the adoptions violated testatrix's intent, and Neilson's adopted children responded that they should be given summary judgment declaring them to be heirs along with the natural children. The trial court concluded that testatrix's will unambiguously included Neilson's adopted children, and granted their summary judgment motion. *Id.* On appeal by Neilson's natural children, the court reversed, reasoning that:

> Although Missouri adoption statutes recognize adult adoptions, statutes do not directly govern an adopted child's right to inherit from a will. The testator's intent governs. Whether an adopted child takes under a devise varies from case to case according to the testator's intent as determined by construction of the whole will in light of surrounding circumstances.
>
> We have no doubt that [testatrix] intended to include adopted children in the class to receive the residuary of her trust. . . .
>
> The trial court erred, however, in concluding that this resolved all questions before it. Unanswered is whether the trial court should have presumed [testatrix] to

have intended to include within the gift class the particular adults adopted by Neilson—persons with whom Neilson had no apparent prior family relationships.

\*     \*     \*     \*     \*     \*

> Inquiry into the motives behind an adoption should indeed be irrelevant . . . if the court presumes the testator to have included in his or her gift class only individuals who would be a natural object of his or her bounty. . . . Even if a desire to make the adoptee qualify as a beneficiary motivated the adoption, that motive is immaterial so long as the courts presume a testator to include within a gift class only persons who have a familial tie to the testator's family. Restricting the presumption of inclusion to only individuals who are the natural object of the testator's bounty should be sufficiently effective in sifting the bounty hunters from the class.

*Id.* at 38[2], 39[3] (citations omitted). The court directed that as the trial court seeks to determine whether the persons adopted by Neilson have familial ties, it should look to several factors: whether the adopter has assumed responsibility for the adoptee; whether the adoptee has taken the adopter's surname; whether the adoptee entered adopter's home, and if so, at what age; the length of time the adopter and adoptee lived together; and the nature and extent of adopter's and adoptee's parent-child relationship. *Id.* at 39[4].

Here, in identifying Testator's "heirs-at-law," the trial court may consider the factors set out in *Davis, supra.* Accordingly, the trial court did not err in considering evidence concerning Ewing Hill Buysse's motives in adopting appellants Conklin and Coker. Point denied.

█ Finally, in their brief, respondents assert that they are entitled to have their costs and expenses for this appeal paid from Trust assets prior to distribution. It is the general rule that when the trust instrument is so ambiguous or difficult to apply and administer that two or more persons may fairly make an adverse claim to the fund or its proper allocation, either may resort to a court of equity for a correct interpretation,

and the court is justified in not only assessing costs of the litigation against the trust estate, but also in allowing reasonable attorneys' fees and expenses payable out of the trust estate both to the defeated and to the successful parties. *Coates v. Coates,* 316 S.W.2d 875, 878[2] (Mo.App.1958). Because appellants and respondents fairly made adverse claims about the allocation of the Trust to this court, we conclude that appellants and respondents are entitled to have their costs and expenses for the appeal paid from Trust assets prior to distribution, and that the trial court shall make a determination as to the reasonable amount of attorneys' fees.

We remand for further proceedings not inconsistent with this opinion.

Judgment affirmed in part, and reversed and remanded in part with directions.

SMITH and PUDLOWSKI, JJ., concurs.