KATHLEEN M. SANZO'S APPEAL FROM PROBATE*
(AC 32663)

DiPentima, C. J., and Beach and Foti, Js.

* The appeal in this case was originally filed with the caption KATHLEEN M. SANZO v. APPEAL FROM PROBATE. The caption has been changed to reflect that the Appeal from Probate is not a party. It should be noted that the microfiche version of the Appellate Court Record and Briefs in this case will be found under the original title.

Argued October 21, 2011—officially released January 17, 2012

*William H. Clendenen, Jr.*, with whom was *Elizabeth R. McKenna*, for the appellant (plaintiff).

*Stephen E. Pliakas*, with whom was *Robert Nastri, Jr.*, for the appellee (defendant David Sanzo).

*Opinion*

BEACH, J. The plaintiff, Kathleen M. Sanzo, appeals from the judgment rendered following a jury verdict against the admission to probate of the will of her

mother, Catherine D. Sanzo (Sanzo), and from the denial of her motion to set aside the verdict. On appeal, the plaintiff claims that the trial court erred by (1) permitting a lay witness to offer an opinion in response to a hypothetical question concerning testamentary capacity and (2) denying her motion to set aside the jury verdict. We affirm the judgment of the trial court.

The following facts, which the jury reasonably could have found, and procedural history are relevant to the plaintiff's appeal. Sanzo died on July 22, 2005. She had made a mark on a document entitled "Last Will and Testament of Catherine D. Sanzo" dated July 17, 2005. The document was witnessed by Kristie Strollo, a social worker at Elim Park, a continuing care retirement community, where Sanzo was residing, and by Jennifer Pitts, also an employee of Elim Park. The writing provided specific bequests of $40,000 to each of her three sons—David Sanzo, Patrick Benedetto and Frank Nettinger, Jr.—and the residue to her daughters—the plaintiff and Karen Sanzo. Following a hearing, the Probate Court refused to admit the purported will to probate on the ground that the proponents, Sanzo's daughters, failed to establish Sanzo's testamentary capacity. Sanzo's daughters appealed separately to the Superior Court, where a trial before a jury was held. The jury returned a verdict in favor of the defendant contestants, David Sanzo and Benedetto,[1] on the ground that Sanzo, at the time of execution, did not have the testamentary capacity to execute a will. The plaintiff and Karen Sanzo then filed motions to set aside the verdict and for a new trial, which the court denied. This appeal followed.[2] Additional facts will be set forth as necessary.

---

[1] Nettinger was not a party to the action.

[2] Karen Sanzo is an appellee in this matter, but her attorney has submitted a letter to this court stating that "[t]he interests of Karen and Kathleen are identical in this matter, and Karen Sanzo supports the position that is urged by Kathleen Sanzo . . . ."

## I

The plaintiff first argues that the court erred by permitting Strollo, a lay witness, to answer a question calling for an opinion regarding a hypothetical question. We disagree.

The following additional facts are relevant. At trial, Strollo testified on direct examination as follows. While working at Elim Park as an admitting social worker, Strollo was asked to go to Sanzo's room. An attorney in the room, Bonye Wolf Barone, asked if Strollo and Pitts, also in the room, would witness the signing of a will by Sanzo. Sanzo made a mark on the purported will in the presence of Strollo and Pitts. Strollo then signed her name on the will in two places, attesting, inter alia, that the will was subscribed, published and declared by Sanzo to be her last will and testament, and that at the time of the execution, Sanzo appeared to be of sound mind and memory and "not in any respect incompetent to make a Will disposing of real and personal property . . . ."

On cross-examination, Strollo testified that she did not recall whether she understood at the time she was asked to be a witness that she would be witnessing a will. She further testified that while she was present in the room, Barone did not review the provisions of the document with Sanzo, nor did Sanzo read the document. Strollo then testified that contrary to the language appearing on the purported will, Sanzo did not: declare to Strollo that that was her last will and testament, ask Strollo to sign her name on the document or request Strollo to make the affidavit that she signed. Strollo also testified that she could not recall whether Barone took her oath or asked her to swear to the truth of the affidavit's contents.[3] In response to specific questions

---

[3] Barone testified at trial that she "merely stated to [the witnesses] that by signing they were stating that they witnessed [Sanzo] making her mark on the paper." She further testified that the witnesses were not duly sworn and that she did not take their oaths. Thus, there was no evidence, other

by defense counsel, Strollo testified that while she was present in the room, there was no discussion about the size of Sanzo's estate, who Sanzo's children were, what time it was, what day it was or who the president was.

Strollo was then asked: "You didn't receive any information from . . . Sanzo, that day in her room, from which you could conclude that she was of sound mind and memory, did you?" Strollo replied, without objection: "No." Strollo was next asked: "So, if you had been asked to sign this affidavit, in which you would have been asked to swear that she was of sound mind and memory, you just didn't have enough information?" The plaintiff's counsel objected, and the court excused the jury from the courtroom. The plaintiff's counsel explained that the basis for his objection was that "[Strollo] was specifically asked whether or not when she was signing the affidavit whether she was sworn to sign the affidavit" and that a layperson should not be permitted to answer the posed hypothetical question. The court concluded that it was a proper question and summoned the jury to return to the courtroom. Defense counsel then asked Strollo: "I'm going to try to repeat the question as closely as I can. Given the information, or the lack of information you received from . . . Sanzo on July 17, if you had been asked to swear under oath that she was of sound mind and memory, would you have done so?" The plaintiff's counsel objected on the grounds of irrelevance and immateriality, the court overruled the objection and Strollo replied: "No."

"Unless an evidentiary ruling involves a clear misconception of the law, the [t]rial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the

than the document itself, indicating that Strollo knew she was confirming testamentary capacity.

court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling . . . . The harmless error standard in a civil case is whether the improper ruling would likely affect the result. . . . When judging the likely effect of such a trial court ruling, the reviewing court is constrained to make its determination on the basis of the printed record before it. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Citation omitted; internal quotation marks omitted.) *Dinan* v. *Marchand,* 279 Conn. 558, 567, 903 A.2d 201 (2006).

The plaintiff argues that the court erred by permitting a lay witness to offer speculative opinion testimony in response to a hypothetical question. She claims that the "opinion" was not based on personal observation and that the expression of "opinion" required Strollo to assume details that she could not recall. The plaintiff is correct in her assertion that lay witnesses are allowed in some circumstances to provide testimony, including opinion testimony, based on their personal observations. See *State* v. *Watson,* 50 Conn. App. 591, 600, 718 A.2d 497 (lay witnesses may testify as to observed facts), cert. denied, 247 Conn. 939, 723 A.2d 319 (1998), cert. denied, 526 U.S. 1058, 119 S. Ct. 1373, 143 L. Ed. 2d 532 (1999), cert. dismissed, 255 Conn. 953, 772 A.2d 153 (2001). The plaintiff's argument fails, however, because Strollo's testimony was, in fact, based on personal observation.

Immediately prior to the question to which defense counsel objected, Strollo testified without objection that she had no information from Sanzo that day in the room from which Strollo could conclude that Sanzo was of sound mind and memory. This question followed testimony of Strollo concerning her recollection that Sanzo did not read the document, Barone did not read

the document to Sanzo, Sanzo did not declare the document to be her last will and testament or request that Strollo witness and sign the document, and that there was no discussion about the size of Sanzo's estate or whether she knew who her children were. The arguably hypothetical nature of the question in dispute did not change the fact that the answer was based on Strollo's personal observation of what transpired in Sanzo's room. See *Cimino* v. *Robinson*, 6 Conn. App. 680, 685, 507 A.2d 486 (lay witness may provide opinion to hypothetical question if based on personal observation), cert. denied, 200 Conn. 802, 509 A.2d 517 (1986); Conn. Code Evid. § 7-1 (conditioning opinion testimony by lay witness on whether rationally based on perception of witness and helpful to clear understanding of testimony of witness or determination of fact in issue). Further, the July 17 writing already had been introduced into evidence at the time Strollo was asked the question in dispute, and, accordingly, the door was open for defense counsel to ask questions about the attestations that Strollo's signature affirmed. Strollo's answer to whether she would have sworn[4] that Sanzo was of sound mind and memory was marginally relevant, especially in light of the attestation on the document previously admitted into evidence, which, on the surface, indicated that Strollo had sworn that Sanzo was of sound mind and memory. Strollo's answer was based on her observations while in Sanzo's room and is supported by the self-evident proposition that one likely would not swear to that which is false.[5]

---

[4] Strictly speaking, the question and answer provided little new evidence and was largely cumulative. Once it was established that Strollo had no information on which she could form an opinion as to testamentary capacity, the follow-up question as to what she would have sworn to, had the question been presented to her, is largely academic.

[5] Ordinarily, a hypothetical question about what one would have sworn to on a certain set of facts is problematical and usually logically redundant, as the witness is under oath when testifying. The circumstances of the present case are, however, unusual. The jury had before it evidence that the witness had previously sworn that Sanzo was of sound mind and memory.

In further support of her argument that the court erred by allowing into evidence Strollo's testimony in question, the plaintiff contends that the court erred by allowing lay testimony on an ultimate issue in the case, namely, testamentary capacity. She acknowledges that case law recognizes an exception with regard to testamentary capacity to the general rule that lay opinion testimony on ultimate issues is prohibited, but she argues that these cases predate Code of Evidence § 7-3 and were therefore overruled when § 7-3 was promulgated. We are not persuaded.

As the plaintiff asserts, case law supports the proposition that lay witnesses may testify as to a testatrix' mental condition. See, e.g., *Nichols* v. *Wentz*, 78 Conn. 429, 439–40, 62 A. 610 (1905); *Turner's Appeal*, 72 Conn. 305, 316, 44 A. 310 (1899). Our Supreme Court has stated that "the [C]ode [of Evidence] was not intended to displace, supplant or supersede common-law evidentiary rules or their development via common-law adjudication . . . ." *State* v. *DeJesus*, 288 Conn. 418, 455, 953 A.2d 45 (2008). The Code of Evidence also explicitly states that because it "was intended to maintain the status quo, i.e., preserve the common-law rules of evidence as they existed prior to adoption of the Code, its adoption is not intended to modify any prior common-law interpretation of those rules." Conn. Code Evid. § 1-2 (a), commentary. Accordingly, we reject the plaintiff's argument that the code overruled prior case law holding that lay witnesses may testify as to their belief regarding a testatrix' mental condition, and we conclude that the court did not err in allowing such testimony of Strollo.

At trial, facts were introduced to show that Strollo had intended to make no such assertion and, passively or actively, had been misled into signing the writing making such assertion. Under these circumstances, the court did not abuse its discretion by allowing the question.

## II

The plaintiff next argues that the court erred by denying her motion to set aside the verdict. She bases her argument on the grounds that (1) the court erred by allowing certain opinion testimony of Strollo and (2) the jury verdict was against the weight of substantial evidence. In part I of this opinion, we rejected the plaintiff's argument regarding the opinion testimony of Strollo, and we similarly are not persuaded by the plaintiff's weight of the evidence claim.

"[Our] review [of a trial court's denial of a motion to set aside the verdict] involves a determination of whether the trial court abused its discretion, according great weight to the action of the trial court and indulging every reasonable presumption in favor of its correctness . . . since the trial judge has had the same opportunity as the jury to view the witnesses, to assess their credibility and to determine the weight that should be given to their evidence. . . . [A trial court may] set aside a verdict where it finds it has made, in its instructions, rulings on evidence, or otherwise in the course of the trial, a palpable error which was harmful to the proper disposition of the case and probably brought about a different result in the verdict." (Internal quotation marks omitted.) *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 276, 828 A.2d 64 (2003).

"Any person eighteen years of age or older, and of sound mind, may dispose of his estate by will." General Statutes § 45a-250. "What constitutes testamentary capacity is a question of law. . . . To make a valid will, the testatrix must have had mind and memory sound enough to know and understand the business upon which she was engaged, that of the execution of a will, at the very time she executed it. . . . Whether she measured up to this test is a question of fact for the trier." (Citations omitted.) *City National Bank & Trust Co.'s*

*Appeal,* 145 Conn. 518, 521, 144 A.2d 338 (1958). "The burden of proof in disputes over testamentary capacity is on the party claiming under the will. . . . While there is a presumption of sanity in the performance of legal acts, the party that presents a will still bears the burden of going forward with his proof, and only then does the burden shift to the opponents to prove incapacity." (Citations omitted.) *Stanton* v. *Grigley,* 177 Conn. 558, 564, 418 A.2d 923 (1979).

The plaintiff argues that the weight of the evidence demonstrates that Sanzo possessed the necessary testamentary capacity to execute a will on July 17, 2005. In denying the plaintiff's motion to set aside the verdict, the court rejected the plaintiff's argument that the jury verdict was against the weight of the evidence. The court reasoned: "Before the jury was evidence that the [testatrix] was nonverbal, the will's contents were not read aloud to her, the [testatrix] had lung cancer that had metastasized to her brain, and Strollo testified that she did not believe the [testatrix] had capacity to make a will.[6] While Strollo's testimony was in conflict with her previously signed oath, Strollo's credibility, as well as the impact and veracity of all the evidence, were questions for the jury, and this court should not act to overturn their judgment unless justice requires it." While there may have been some evidence supporting a finding that Sanzo possessed testamentary capacity, we cannot conclude that the court abused its discretion by finding that the jury could have reasonably and legally reached its verdict that the plaintiff failed to meet her burden to establish testamentary capacity.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] The observation of the court as to Strollo's testimony regarding testamentary capacity appears to be the result of deduction by the court rather than a literal recollection of her testimony.