******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID ERIC EDER'S APPEAL FROM PROBATE*
(AC 39024)

Lavine, Alvord and Beach, Js.

*Syllabus*

D, the biological son of the settlor, J, appealed to the trial court from the order and decree of the Probate Court concluding that the remainder beneficiaries of J's irrevocable trust included not only D, but also J's adopted adult children, S and M. J had created the trust in 1991, and it terminated in 2011. The trust provided for distribution of the trust property upon its termination "to each child of the settlor then living." J had one biological child, D, born in 1963, and adopted S and M in 2010. J had established a relationship with S and M as early as 1972 when he first met their mother, R, and began to live with R, S, and M in 1975, when S was six years old and M was four years old. Following J's separation from R in 1985, J continued his relationship with S and M, and provided them with financial and emotional support. J and D had a falling-out in 2009. In 2011, the trustees of the trust filed an application in the Probate Court seeking a determination of the trust's beneficiaries. The Probate Court decreed that D, S, and M were all remainder beneficiaries of the trust. Thereafter, D appealed to the trial court, claiming that by adopting S and M, J improperly added two remainder beneficiaries to the trust to reduce the size of his share of the trust's corpus. Following a hearing, the trial court concluded that the Probate Court had properly construed the trust and it rendered judgment dismissing the appeal, from which D appealed to this court. *Held*:

1. D could not prevail on his claim that the trial court improperly concluded that the intent of J in adopting two adults was not relevant to determining whether the adoptions were a sham: that court, which found that, pursuant to the trust, D's share could be reduced permissibly only if J had another biological child or had adopted a child under circumstances in which the adoption could be viewed as a natural expression of a desire to recognize a preexisting familial bond between the settlor and the adopted children, concluded that the adult adoptions in the present case were not a sham or subterfuge just to hurt D, but were consistent with J's affectionate and long-term relationship with S and M, who at the time of the adoptions could be considered natural objects of the settlor's bounty, and that the adoptions were a recognition of the desire of J, S and M to continue that bond, independent of a desire to harm D; furthermore, J, as the settlor, adopted the two adults and brought them into the class of remainder beneficiaries of the trust, which defined the beneficiaries as J's then living children, either biological or adopted, adopted children are permitted under state law to take under a trust unless it explicitly excludes them, the trust here unambiguously included S and M, and their adoptions did not alter the intent of the trust or do violence to public policy concerning adoption.

2. The trial court properly concluded that because S and M were the natural objects of J's bounty, their adoptions by J did not contravene the purpose or intent of the trust, which had to be determined from the language of the trust, not external factors; the trust provided that a remainder beneficiary was, at the time the trust terminated, a child of the settlor then living, biological or adopted, our statutes permit adult adoptions and adoptees to take under a testamentary instrument, unless they are expressly excluded, which did not occur here, and the trust contemplated that J could have more children after its creation.

Argued May 30—officially released October 10, 2017

*Procedural History*

Appeal from the decision of the Probate Court for the district of New Haven determining the beneficiaries of a certain trust, brought to the Superior Court in the judicial district of New Haven and tried to the court,

*Hon. Thomas J. Corradino*, judge trial referee; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Affirmed.*

*David R. Schaefer*, with whom, was *Michael T. Cretella*, for the appellant (plaintiff).

*Glenn W. Dowd*, with whom, were *Seth Morgan Kaplowitz* and *Casey R. Healey*, and, on the brief, *Howard Fetner*, for the appellees (defendants).

*Opinion*

LAVINE, J. David Eric Eder (David Eder), the biological son of the settlor, John Dennis Eder (settlor), appealed to the Superior Court from a decree of the Probate Court concluding that the remainder beneficiaries of the John Dennis Eder Annuity Trust (trust) include not only the settlor's biological child, but also his adult adopted children.[1] Following a hearing, the Superior Court concluded that the Probate Court properly had construed the trust and dismissed the appeal. David Eder appealed to this court, claiming that, as a matter of law, the Superior Court erred by holding (1) that the settlor's intent in establishing the trust was not relevant to determining whether the subject adoptions were a sham and (2) that the adoptions did not contravene the purpose and intent of the trust because the adoptees were the natural objects of the settlor's bounty. We affirm the judgment of the court.

The root cause of the present appeal appears to be a falling-out between a father and his biological son. The Court of Probate for the district of New Haven succinctly set forth the crux of the appeal in its decree issued on February 12, 2014. "[The settlor created the trust] on October 21, 1991. The trust has terminated as of October 21, 2011. An irrevocable trust, the trust provides for distribution of trust property upon termination to '*each child of the* [*settlor*] *then living.*' Though the settlor has only one biological child, [David Eder], the settlor recently adopted, on June 30, 2010, in the [commonwealth] of Massachusetts, two adults, Sacha [Richter] and Mischa Richter [Richter brothers]. On November 3, 2011, the trustees brought an application for the determination of the trust's beneficiaries. At issue is whether the settlor's adopted children fall within the trust's class of beneficiaries and may thus benefit from the distribution of trust assets as remainder beneficiaries, or are disqualified outside of such trust by fraud or other cause." (Emphasis added.) The Probate Court determined that the remainder beneficiaries of the trust include both the settlor's biological son and his adopted children. The Probate Court ordered the trustees to distribute the trust in equal shares to David Eder, Sacha Richter, and Mischa Richter.[2]

After the Probate Court issued its decree, on March 11, 2014, David Eder appealed to the Superior Court. As reasons for the appeal, he alleged that he was aggrieved by the Probate Court's decree because "neither adoptee is a 'Child' of John Eder within the meaning of that term contained in the [trust]; and even if the term 'Child' in the [trust] could be interpreted to include adopted children, the adoption of the Richter brothers was a fraud/sham entered into for the sole purpose of changing the beneficiaries of an irrevocable trust."

The court found the following facts, which are not challenged by David Eder. David Eder was born to the settlor and Pearl-Ellen Bench (mother) in 1963, when the settlor was eighteen years old. The settlor and mother divorced soon thereafter. Throughout his childhood, David Eder lived in Connecticut with his mother and her second husband, H. William Shure. Shure had a parent-like relationship with David Eder, and they remain close today. The settlor had little involvement with David Eder and moved to Provincetown, Massachusetts, in 1970.

The settlor met Jill Richter in 1972 and began to live with her and her sons, the Richter brothers, in 1975. At the time, Sacha Richter was six years old and Mischa Richter was four years old. For the next ten years, the settlor, Jill Richter, and the Richter brothers lived together in Provincetown. The settlor and Jill Richter separated in approximately 1985, but the settlor has continued his relationship, including financial and emotional support, with the Richter brothers to the present day.

In 1991, for tax planning purposes, Arthur Eder, the settlor's father, directed his attorney to draft a trust instrument for the settlor.[3] Pursuant to the settlor's trust, the settlor was to receive $114,000 per year for twenty years at which time the trust ended; the corpus of the trust was to be distributed in equal shares to "each child of the [settlor] then living." The settlor executed the trust on October 21, 1991.

David Eder and the settlor had an amicable relationship until approximately 2009. For reasons that are not directly relevant to this appeal, the settlor had a falling-out with David Eder and sought to disinherit him. He consulted Michael D'Addio, an attorney trustee, to undo the monetary gifts that he had made to David Eder. Michael D'Addio informed the settlor that, for tax purposes, the trust was irrevocable and that the settlor did not have the authority to revoke the trust or change the beneficiary.

The court found that, in 2010, the settlor wished to legalize his parental relationships with the Richter brothers and talked to them individually about his plan. The Richter brothers, who were adults, agreed to be adopted by the settlor, and the Probate and Family Court for the County of Barnstable, Massachusetts, approved the adoptions on June 30, 2010. The settlor admitted that the reason he adopted the Richter brothers at the time was "to include them in the [trust] before the date expired." The trust terminated on October 21, 2011.

David Eder claims that by adopting the Richter brothers, the settlor improperly added two remainder beneficiaries to the trust to reduce the size of his share of the trust's corpus. On November 3, 2011, the trustees,

Michael D'Addio and Gail D'Addio, filed an application in the Probate Court seeking a determination of the trust's beneficiaries. After the Probate Court decreed that David Eder as well as the Richter brothers were the remainder beneficiaries of the trust, David Eder appealed to the Superior Court.

The standard of review applicable to probate appeals is well known. "In a probate appeal . . . the Superior Court's jurisdiction is statutory and limited to the order appealed from. The issues presented for review are those defined in the reasons of appeal. The Superior Court cannot consider or adjudicate issues beyond the scope of those proper for determination by the order or decree attacked. This is so even with the consent of the parties to the appeal because the court has subject matter jurisdiction limited only to the order or decree appealed from." *Silverstein's Appeal from Probate*, 13 Conn. App. 45, 58, 534 A.2d 1223 (1987). "[The Superior Court] tries the questions presented to it de novo, but in so doing it is . . . exercising a special and limited jurisdiction conferred on it by the statute authorizing appeals from probate." (Internal quotation marks omitted.) Id., 53–54.

The probate appeal was tried on July 27 and 28, 2015. On March 2, 2016, the court issued a lengthy and comprehensive memorandum of decision dismissing the appeal, holding that the Richter brothers, as adoptees, are children of the settlor within the meaning of the trust and that the adoptions were not a sham as the adoptees were the natural objects of the settlor's bounty. David Eder appealed.

In this court, David Eder claims that, as a matter of law, the Superior Court erred in holding (1) that the settlor's intent in adopting two adults was not relevant to a determination of whether the adoptions were a sham and (2) that the purpose of the trust was not contravened by the settlor's adopting the Richter brothers because they were the natural objects of his bounty. We disagree.

## I

## THE TRUST

In adjudicating the probate appeal, the court first construed the trust. "Where the language of the [trust instrument] is clear and unambiguous, the [instrument] is to be given effect according to its terms. A court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity. . . . [T]he issue of intent as it relates to the interpretation of a trust instrument . . . is to be determined by examination of the language of the trust instrument itself and not by extrinsic evidence of actual intent. . . . The construction of a trust instrument presents a question of law to be determined in the light of facts that are found by the trial court or are undisputed or indisput-

able." (Citation omitted; internal quotation marks omitted.) *Heath* v. *Heath*, 150 Conn. App. 199, 203–204, 90 A.3d 362, cert. denied, 312 Conn. 921, 94 A.3d 1200 (2014); see also *Heffernan* v. *Freedman*, 177 Conn. 476, 481, 418 A.2d 895 (1979). An appellate court's review of conclusions of law is plenary. *State* v. *Velasco*, 248 Conn. 183, 189, 728 A.2d 493 (1999).

The court found that, at the urging of his father, the settlor established an annuity trust in 1991, which was to terminate in twenty years. The trust was to provide the settlor with $114,000 per year and after twenty years, the trust was to terminate and the trust assets were to be distributed "into separate, equal shares, so as to provide one share for *each child of the Grantor then living* . . . ." (Emphasis added.) The court identified the relevant provisions of the trust.

Subsection one of Article XIII of the trust is entitled "Definitions" and provides: "Lineal Descendants: The term 'lineal descendants' used anywhere in this Trust Indenture shall mean child, grandchild, great-grandchild, etc., whether so *related by blood or legal adoption*, including any of the aforesaid born or *adopted after the signing* of this Trust Indenture. The grantor's only living child is David Eric Eder." (Emphasis added.) Subsection six of Article I contemplates that the grantor may have other children at the time the trust terminated in twenty years.[4] Specifically, subsection six provides in relevant part: "[u]pon the Termination Date, the Trustees shall divide the Trust Property, as it shall then exist, into separate, equal shares, so as to provide one share *for each child of the Grantor then living* . . . ." (Emphasis added.)

Article XII of the trust instrument provides "[t]his trust is irrevocable and the Grantor shall have no right whatsoever to alter, amend, revoke, or terminate the trust created hereunder, in whole or in part." Article X, "Governing Law," states that "Trust Indenture has been accepted by the Trustees and its validity, construction, and all rights thereunder shall be governed by the laws of the State of Connecticut."

The court consulted our General Statutes as they pertain to adoption. Our statutory law permits the adoption of adults and provides that the adopted person shall be the legal child of the adoptive parent. See General Statutes § 45a-734.[5] General Statutes § 45a-707 provides in relevant part: "(1) 'Adoption' means the establishment by court order of the legal relationship of parent and child . . . (5) 'Parent' means a biological or adoptive parent . . . ."

The court concluded that pursuant to the trust and the statutory laws of this state, the Richter brothers are the settlor's children pursuant to the Massachusetts adoption decree.[6] David Eder does not challenge the validity of the adoptions or that the Richter brothers

are the settlor's children. Rather, his claim is that the settlor's adoption of the Richter brothers was a sham that altered the terms and purpose of the trust.[7] We disagree.

## II

### THE ADOPTIONS

The court recognized that under § 45a-731 (4), an adopted child, unless expressly excluded by the trust, shall be treated as a biological child of the adopting parent, that § 45a-734 allows for the adoption of adults, and that full faith and credit must be afforded to the Massachusetts adoption. The court found that the trust did not expressly exclude adopted children. It also found that the trust identified David Eder as the settlor's only living child at the time the trust was established, and that the trust contemplated that the settlor could have other children living when the trust terminated in 2011.[8] David Eder claimed that the settlor had an improper motive in adopting the Richter brothers that required the court to determine whether the settlor's adoption of the Richter brothers was a sham and act of subterfuge that violated the settlor's original intent in establishing the trust. The court found no Connecticut case on point and looked to the common law of other jurisdictions, as suggested by the parties, for guidance.

It has been stated that a sham or subterfuge adoption occurs "when an adult is adopted for the sole purpose of making him or her an heir and claimant to the estate of an ancestor under the terms of a testamentary instrument known and in existence at the time of the adoption . . . thwarts the intent of the ancestor whose property is being distributed and cheats the rightful heirs." *Minary* v. *Citizens Fidelity Bank & Trust Co.*, 419 S.W.2d 340, 343 (Ky. 1967).

The first sentence of Article XII of the trust provides "[t]his Trust Indenture is irrevocable and the grantor shall have no right whatsoever to alter, amend, revoke, or terminate the trust created hereunder, in whole or in part." The court determined that the settlor could not "change the operation of the trust by a sham adoption done solely for the purpose of creating beneficiaries [that] has the effect of reducing the benefits that would have otherwise accrued to a beneficiary absent the adoption."

Generally, courts that disfavor adult adoptees from taking under a testamentary instrument consider the adoption an act of subterfuge. "It is of paramount importance that man be permitted to pass on his property at his death to those who represent the natural objects of his bounty. This is an ancient and precious right running from the dawn of civilization in an unbroken line down to the present day. Our adoption statutes are humanitarian in nature and of great importance to the welfare of

the public. However, these statutes should not be given a construction that does violence to the above rule and to the extent that they violate the rule and prevent one from passing on his property in accord with his wishes, they must give way. Adoption of an adult for the purpose of bringing that person under the provisions of a preexisting testamentary instrument when he clearly was not intended to be so covered should not be permitted . . . ." *Minary* v. *Citizens Fidelity Bank & Trust Co.*, supra, 419 S.W.2d 343–44. In a number of cases, an adoption has been considered an act of subterfuge that defies the will of the grantor when a beneficiary of a trust or will adopted an adult, such as a spouse; see *Matter of Trust Created by Belgard*, 829 P.2d 457, 460 (Colo. App. 1991); a same sex partner; see *Cross* v. *Cross*, 177 Ill. App. 3d 588, 590–91, 126 Ill. Dec. 801, 532 N.E.2d 486 (1988), appeal denied, 126 Ill. 2d 558, 541 N.E.2d 1105 (1989); or the adult children of a much younger first spouse whom the beneficiary married late in life; see *Dixon* v. *Weitekamp-Diller*, 365 Ill. Dec. 732, 737–38, 979 N.Ed.2d 98 (Ill. App. 2012), appeal denied, 367 Ill. Dec. 618, 982 N.E.2d 768 (2013); that had the effect of enlarging the beneficiary class of lineal descendants.

The court cited and analyzed numerous cases from other jurisdictions involving trust or will contests involving the adoption of adults. "Adult adoptions in estates and trusts cases have been rife with controversy. This controversy has led to three lines of cases among the jurisdictions in deciding the effect of an adult adoption on the construction of a testamentary instrument. The oldest line presumes all adult adoptees to be included in class gifts to children. A second line presumes all adult adoptees to be excluded from class gifts to children. A third line takes the middle ground by allowing exceptions to presumptive inclusion or exclusion depending on particular circumstances." (Footnotes omitted.) *Davis* v. *Neilson*, 871 S.W.2d 35, 38 (Mo. App. W.D. 1993).

In resolving the appeal, the court adopted what it called the commonsense test articulated in *Davis*. "[C]ommon sense tells us that a donor would normally expect anyone partaking of his bounty to be a true family member and not just some willing adult adopted for the purpose of reducing or defeating a gift-over to others. . . . Common sense tells us that [the testator], by inserting adopted children in the class described as [the settlor's] issue, intended to include only individuals with some familial bond to her family—individuals to whom [the settlor] felt a familial bond of love and duty, such as adult stepchildren." (Citation omitted; footnote omitted; internal quotation marks omitted.) Id.

Courts generally recognize the public policy and humanitarian nature of adoption but also recognize that those humane purposes can be thwarted by an adoption

of an adult for the mere purposes of bringing the adoptee within the class of beneficiaries. It has been stated that Kentucky's "adoption statutes are humanitarian in nature and of great importance to the welfare of the public. However, these statutes should not be given a construction that does violence to [the rule that prevents one from passing his or her property in accord with her or his wishes]." *Minary* v. *Citzens Fidelity Bank & Trust Co.*, supra, 419 S.W.2d 344.

In the present case, the court reasoned that the purpose of adoption laws would not be thwarted by barring a wife who had been adopted by her husband from taking under a trust thus depriving a clearly indicated alternate beneficiary from receiving trust proceeds. A settlor's intent, however, would not be thwarted if an adoptee who was a natural object of the adopter's affections in a parental relationship over the years was a trust beneficiary despite the fact that the adoption took place after the parental relationship commenced and when the adoptee was an adult. See, e.g., *In re Trusts Created by Agreement with Harrington*, 311 Minn. 403, 250 N.W.2d 163, 164 (1977) (foster children adopted as adults).

On appeal to the Superior Court, David Eder contended that the settlor's adoption of the Richter brothers was a sham to amend the trust thereby reducing his share of the corpus when the trust terminated. The court concluded that, pursuant to the trust, David Eder's share could be reduced permissibly only if the settlor had another biological child or had adopted a child under circumstances in which the adoption could be viewed as (1) a natural expression of a desire to recognize a preexisting familial bond between the settlor and the Richter brothers, who at the time of the adoptions were adults and could be considered natural objects of the settlor's bounty and (2) a recognition of the settlor's and the Richter brothers' desire to continue the bond. The court then turned to the facts of the case before it and made the following findings regarding the settlor's relationships with David Eder and with the Richter brothers.

After David Eder was born, the settlor had little involvement with him. David Eder never lived with the settlor in Massachusetts, only visited him for short periods of time, and periodically saw him at the home of the settlor's parents in Connecticut. David Eder lived with his mother and William Shure with whom he has a father-son relationship that continues to the present time. David Eder has a close relationship with his half brother Andrew Shure.

The settlor clearly has a family-like relationship with the Richter brothers. When he lived with Jill Richter, he was a father figure to them and made substantial contributions to their financial support. He did homework with them, taught them how to ride a bicycle, and

engaged in other age appropriate parent-child activities. The settlor took the Richter brothers to and from school and attended parent-teacher conferences. They "would draw together" and create objects out of different material, which were activities not foreign to their future careers; Sacha Richter is an artist and Mischa Richter is a photographer. On several occasions, the settlor took the Richter brothers to Connecticut to visit his parents.

Jill Richter returned to England in 1985. The settlor visited Mischa Richter there six or eight times, traveled with him in Morocco for several weeks, and participated in his wedding in England. Mischa Richter's children call the settlor "grandpa." Sacha Richter lives in Provincetown, and sees the settlor frequently or speaks to him by phone. The settlor also participated in Sacha Richter's wedding.

Other indicia of the settlor's relationship with the Richter brothers that were put into evidence include cards and letters the Richter brothers had sent to him when they were young men before the legal dispute with David Eder began. The court reasoned that there was no reason for the settlor to save the cards and letters if there were no close relationship between him and the Richter brothers. After the Richter brothers left the settlor's home in 1985, he provided financial support for books, rent, and parking tickets when they were in college. The settlor put into evidence a record of the checks he wrote to the Richter brothers. Between 1991 and 2001, Mischa Richter received two checks; one in the amount of $20,000 was to help with the purchase of property in London. Between 1995 and 2005, the settlor wrote sixteen checks to Sacha Richter totaling $40,134 for a variety of purposes; one check was for $20,000 to help purchase a home in Provincetown. In addition to writing checks for the Richter brothers, the settlor gave them cash. The court found that the settlor made the monetary gifts before 2009 when the settlor had a falling out with David Eder and are indicia of a familial bond between the settlor and the Richter brothers. The court concluded that the Richter brothers were the natural objects of the settlor's natural bounty.

The court found that the settlor's financial gifts to the Richter brothers continued after he adopted them. The court concluded that such gifts were further evidence of the continuing close relationship between the settlor and the Richter brothers.[9] The court concluded that the settlor gave the funds to the Richter brothers because they were in need of them, which underscored the court's finding that they were the natural objects of his bounty and confirmed the familial relationship that had existed for years and was independent of a desire to harm David Eder.[10] The court found that the settlor's problems with David Eder may have been a catalyst for him to consider adopting them given his long relationship with the Richter brothers and David

Eder's wealth.[11] The court reasoned that common sense, as described in *Davis* v. *Neilson*, supra, 871 S.W.2d 38, seemed to dictate the adoptions were not a sham or subterfuge just to hurt David Eder, but were consistent with the settlor's affectionate and long-term relationship with the Richter brothers.[12]

### III

### CLAIMS ON APPEAL

David Eder claims that the court erred, as a matter of law, by holding that the intent of the settlor in adopting two adults was not relevant to determining whether the adoptions were a sham. We disagree.

David Eder's claims on appeal are grounded in the principle of the law stated by the Illinois Court of Appeals. "The adoption of an adult solely for the purpose of making him an heir of an ancestor under the terms of a testamentary instrument known and in existence at the time of the adoption is an act of subterfuge. . . . This practice does great violence to the intent and purpose of our adoption laws, and should not be permitted. . . . We cannot condone such a use of the adoption process." (Citations omitted.) *Cross* v. *Cross*, supra, 532 N.E.2d 488–89. In support of his argument, David Eder cites numerous cases from other jurisdictions that are factually distinguishable. In those cases, it was a different generational beneficiary of a trust settled by an ancestor who adopted an adult in order to enlarge the class of beneficiaries. The various courts of appeal declined to permit an adult adoptee to be a part of the beneficiary class.[13] These cases are distinct from the facts in the present case in that it is the settlor who adopted two adults that brought them into the class of remainder beneficiaries of the trust. The trust itself defined the beneficiaries as the settlor's then living children, be they biological or adopted.

The laws of the state of Connecticut permit adopted children to take under a will or trust unless the testamentary instrument explicitly excludes them. See General Statutes § 45a-731 (4). The trust does not exclude adopted children. To the contrary, it unambiguously includes them. The adoptions did not alter the intent of the trust, and they did no "violence" to our public policies concerning adoption.

David Eder also claims that the court erred, as a matter of law, by concluding that the purpose of the trust was not contravened because the Richter brothers were the natural objects of the settlor's bounty. In essence, what David Eder claims is that the settlor did not intend the Richter brothers to be beneficiaries of the trust when it was established. This argument fails because the trust provides that a remainder beneficiary is, at the time the trust terminates, a child of the settlor then living. Intent is to be determined by the language of the trust, not external factors. *Heath* v. *Heath*, supra,

150 Conn. App. 203–204. The trust defined child as a biological or adopted child; our statutes permit adult adoptions and adoptees are permitted to take under a testamentary instrument, unless they are expressly excluded. General Statutes §§ 45a-731 (4), 45a-734. Moreover, the trust contemplated that the settlor may have had more children in 2011 than he had in 1991, a fact David Eder does not challenge. We conclude that the court properly found that the settlor's adoptions of the Richter brothers were not a sham and that the adoptions did not alter that intent of the trust.

For the foregoing reasons, we conclude that the Superior Court properly affirmed the Probate Court's decree that the corpus of the trust is to be distributed to the settlor's then living children, his biological son and his adopted children. The decree is consistent with the intent of the trust and the laws of this state.

The judgment is affirmed.

In this opinion the other judges concurred.

* In the Superior Court, the case was captioned *David Eric Eder* v. *Appeal from Probate*. The judgment file, appeal form, and briefs bear the caption *David Eric Eder* v. *John Dennis Eder et al.* The caption of the case that appears here conforms to the convention our appellate courts use for appeals from probate. See, e.g., *Garrett's Appeal from Probate*, 237 Conn. 233, 676 A.2d 394 (1996); *Baskin's Appeal from Probate*, 194 Conn. 635, 484 A.2d 934 (1984); *Davis's Appeal from Probate*, 39 Conn. 395 (1872); *Sanzo's Appeal from Probate*, 133 Conn. App. 42, 35 A.3d 302 (2012); *Nulman's Appeal from Probate*, 13 Conn. App. 811, 537 A.2d 495, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988).

[1] The following individuals were served with the appeal: John Dennis Eder, settlor; Mischa B. Richter, adopted son; Sacha A. Richter, adopted son; Gail D'Addio, trustee; and Michael D'Addio, trustee.

[2] The Probate Court stayed the distribution of the trust corpus for thirty days and, if appeals were taken, until the final order of a court.

[3] The settlor testified, in part: "I had no help from a lawyer with this document, I looked through the document. My father and I had discussions before this document was given to me to be signed. I made sure that whatever the discussions were that I had with my father were included in the document. There were two major points that I was concerned with, with the document. He told me that I was going to get $114,000 a year, which was included in the document. I never personally received it in my hand per year. But, I don't know, that's one thing. And the other thing I would talk to my father about at that time, when *he had suggested doing this for tax reasons*, was that since I was in my forties, I believe, that I wanted to make sure any future children, either by blood or adoption, was included within this trust document, because I didn't know what was going to happen, you know, further on." (Emphasis added.)

[4] David Eder emphasizes that the trust identifies him as the settlor's only living child at the time the settlor signed the trust, but he does not dispute that the trust contemplates that the settlor may have more children at the time the trust terminates.

[5] Section 45a-734 provides in relevant part: "(a) Any person eighteen years of age or older may, by written agreement with another person at least eighteen years of age but younger than himself or herself unless the other person is his or her spouse, brother, sister, uncle or aunt of the whole or half blood, adopt the other person as his or her child . . . .

"(b) . . . Upon the [probate] court's approval of the adoption agreement, the adopted person shall become the legal child of the adoptive parent, and the adoptive parent shall become the legal parent of the adopted person, and the provisions of section 45a-731 shall apply. . . ."

[6] The Superior Court held in part that not only were the Massachusetts adoptions entitled to full faith and credit in Connecticut; see *Maltas* v. *Maltas*, 298 Conn. 354, 362, 364, 2 A.3d 902 (2010); but also found that General Statutes § 45a-731 provides that "[a] final decree of adoption, whether issued

by a court of this state or a court of any other jurisdiction, shall have the following effect in this state . . . (4) The adopted person shall . . . be treated as if such adopted person were the biological child of the adoptive parent for purposes of the applicability of all documents and instruments, whether executed before or after the adoption decree is issued, which do not expressly exclude an adopted person in their operation or effect. *The words 'child', 'children', 'issue', 'descendant', 'descendants', 'heir', 'heirs', 'lawful heirs', 'grandchild' and 'grandchildren', when used in any will or trust instrument shall include legally adopted persons unless such document clearly indicates a contrary intention. . . .*" (Emphasis added.)

[7] David Eder devoted a number of pages in his appellate brief to the United States tax code and argued that the trust was intended to achieve tax benefits that could not be achieved if the trust were amended. His contention is that by finding that the Richter brothers are remainder beneficiaries of the trust, the trust was altered and the tax benefit lost. The settlor argues that David Eder did not raise that claim in the Superior Court and, therefore, it is not properly before us on appeal. See Practice Book § 60-5; *Brehm* v. *Brehm*, 65 Conn. App. 698, 702–704, 783 A.2d 1068 (2001). In his reply brief, David Eder states that he did raise the tax issue in the Superior Court during argument. The transcript reveals that David Eder's counsel briefly mentioned that a trust established for tax and estate purposes is not revocable.

Whether the claim was raised in the Superior Court, it is nonetheless entirely without merit. Although the court found that the settlor's father had encouraged him to establish the trust for tax planning purposes, it found no provision in the trust regarding taxes. Even if we were permitted to look beyond the language of the trust to determine the settlor's intent, which we may not; see *Heath* v. *Heath*, supra, 150 Conn. App. 203–204; the court did not consider, let alone find, that by adopting the Richter brothers the intended tax benefits of the trust were negated. Moreover, David Eder has identified no evidence to the contrary.

[8] David Eder does not claim that the court erred in finding that the trust contemplated the settlor's having other children between 1991 and 2011.

[9] After May 1, 2010, the settlor wrote checks to Mischa Richter totaling $53,600 of which $50,000 was to purchase a home. After that date, the settlor wrote checks to Sacha Richter totaling $12,880. All of the checks were in the nature of "help me out," typical of a familial setting or where a familial relationship exists. The transfer of funds was made after the settlor adopted the Richter brothers but before funds from the trust could be distributed.

[10] The court also found that the settlor's animosity toward David Eder resulted in his leaving him nothing by way of his will. The settlor wrote a will in 2013, in which he left a small portion of his estate to the Richter brothers and the rest to charity. The court again found that the Richter brothers were the natural objects of the settlor's bounty. The bequest from his estate would not accrue to the Richter brothers until he died. The trust gave them funds that they needed in the present.

[11] The settlor testified: "I mean the trouble I had with David Eder was a catalyst for me to start paying more attention to things that I haven't been paying attention to. And when I realize that I had the opportunity to adopt Sacha and Mischa, who were more or less my kids the way they grew up, I thought why not include them in this if I could. Why not share my estate with them? Why not make our relationship legal?"

[12] See also *Estate of Pittman*, 104 Cal. App. 3d 288, 292–94, 163 Cal. Rptr. 527 (1980), citing E. Halbach, *The Rights of Adopted Children Under Class Gifts*, 50 Iowa L. Rev. 971, 990–91 (1965) (urging replacement of "stranger to the adoption" rule found in some jurisdictions for "loco parentis" rule); and J. ten Broek, *California's Adoption Law and Programs*, 6 Hastings L. J. 261, 275–82 (1955) (family experience and contact theory is when significant percentage of adult adoptions, those in which stepparents have parented children from early age, either learn belatedly of possibility of legally adopting stepchild or were prevented from doing so earlier by nonconsenting biological parent).

[13] See, e.g., *Otto* v. *Gore*, 45 A.3d 120, 128–29 (Del. 2012) (beneficiary adopted former spouse); *Matter of Estate of Nicol*, 152 N.J. Super. 308, 377 A.2d 1201, 1203 (1977) (long unmarried beneficiary son married much older spouse and adopted her children close to his age).